**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**CARLOS MARTINEZ**, et al.,

                Plaintiffs,

    v.

**BELLA FLOWERS & GREENHOUSE,
INC.**, et al.,

             Defendants.

No. 08 CV 1493
Judge George W. Lindberg
Magistrate Judge Jeffrey Cole

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS COUNTS VI AND VII AND CLAIM
FOR ATTORNEYS' FEES IN COUNT III OF COMPLAINT**

    The plaintiffs, CARLOS MARTINEZ, FRANCISCA MARTINEZ, ARMANDO

CELESTINO, JUAN CASTILLO, and SILVINA MARQUEZ, by and through their

attorneys of record, respond to the Defendants' Motion to Dismiss Counts VI and VII and

Claim for Attorneys Fees in Count III of Complaint [Doc. 21] as follows.[1]

    **1.   Whether the plaintiffs other than Carlos Martinez and Armando
        Celestino have been subjected to retaliation is a question of fact
        for the jury.**

    As the defendants set forth in their motion, "to state a viable retaliation claim

under the FLSA, a plaintiff must allege that: (1) she engaged in statutorily protected

activity; (2) she  suffered an adverse action by her employer or former employer; and (3)

a causal connection exists between the protected expression and adverse action . . . .

Further, protected activity under the FLSA requires at least an informal, internal

complaint."  (Mtn. p.3) (citations omitted).

---

[1] The plaintiffs' counsel also does not have access to a Westlaw account, and will therefore attach
unreported decisions cited in this motion as an exhibit.

The plaintiffs alleged in the complaint that when they complained to the defendants about their FLSA violations, they were acting as emissaries of the other plaintiffs, and made their complaints on behalf of all the plaintiffs. (Comp. ¶¶ 67-68). Whether or not the plaintiffs sufficiently communicated the message that they were acting as agents of the other plaintiffs is a question of fact for the jury.

Federal notice pleading "requires the plaintiff to set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. Ill. 1999). A complaint "need not spell out every element of a legal theory to provide notice . . . ," let alone spell out every word the plaintiffs said when they complained to the defendants. *Id.* (citation and internal quotation marks omitted).

"In order for an employer's actions to constitute 'adverse action', they must be actions that would have been materially adverse to a reasonable employee." (Mtn. p. 5) (citations omitted). The defendants argue that Count VI "contains no accusation that Defendants took any action of any type against any of the Plaintiffs aside from Carlos and Armando." (Mtn. p. 5). This is incorrect. The plaintiffs had a right to be paid proper minimum wage and overtime compensation per the FLSA's mandate. When they complained to the defendants through their agent-coworkers that they were being shorted overtime and minimum wage in violation of the FLSA, the defendants responded by firing their agent-coworkers. When they sent Carlos and Armando to make their case to the defendants, the plaintiffs had a reasonable expectation that the defendants would change their ways and begin complying with the law. Instead, by firing Carlos and Armando, the defendants sent a clear message that complaints or would be punished. As

a result, the remaining plaintiffs were damaged in that they were compelled to accept compensation that was less that what the law mandates.  This is clearly something that would be "materially adverse to a reasonable employee."  The allegations in the complaint are sufficient to put the defendants on notice, satisfy the elements of retaliation under the FLSA, and are thus sufficient to withstand a the defendants' 12(b)(6) motion.

> **2.   The defendants' actions prevented the plaintiffs from making a demand pursuant to the AFWAA, and therefore the defendants should be estopped from demanding strict compliance.**

On behalf of all the plaintiffs, Carlos and Armando had demanded that the defendants pay them properly under the law – with disastrous results.  As the defendants intended, the plaintiffs were intimidated when Carlos and Armando were fired.  The remaining plaintiffs feared that requesting access to their payroll records would be interpreted as a complaint and get them fired as well.  Before the plaintiffs had access to the discovery process, they would have been unable to ascertain exactly what they are owed and unable to make an accurate demand.  The defendants' retaliatory actions prevented the plaintiffs from making a demand prior to filing, and therefore the defendants should be estopped from demanding strict compliance with the Act.

> **3.   The Northern District created a "Catch-22" with the assertion that the FLSA provides an adequate remedy for employees that are not covered by the FLSA.**

In recognizing the tort of retaliatory discharge, "the Illinois Supreme Court sought to promote the goal of providing an otherwise remediless employee with an effective remedy against an employer who had discharged him or her in contravention of the state's public policy."  *Cichon v. Exelon Generating Co.*, 2002 U.S. Dist. LEXIS 21228, 6 (N.D. Ill. 2002) (citing *Jarmoc v. Consolidated Elec. Distribs.*, 1992 U.S. Dist. LEXIS 12717, 1

(N.D. Ill. 1992); *Driveaway and Truckaway Serv. v. Aaron Driveaway & Truckaway Co.*, 781 F. Supp. 548, 552 (N.D. Ill. 1991)).  The defendants are correct that the Northern District has refused to recognize that common law retaliatory discharge covers retaliation for assertion of wage and hour rights.  Because of the interplay between federal and state law however, the effect of the Northern District's refusal is to afford a remedy to some employees (those who are covered by the Fair Labor Standards Act, 29 U.S.C. 201, *et seq.* ("FLSA")), but leave numerous others remediless (those who are not covered by the FLSA) based on the inconsistent justification that the FLSA provides a remedy.  The Northern District has created a "Catch-22."

*Chicon* affirmed the holding in *Jarmoc*, which said that because "the available alternate remedy, the FLSA, does in fact provide a deterrent to the proscribed conduct, as well as a remedy for the discharged employee . . . , there is no need to permit a claim for retaliatory discharge." 1992 U.S. Dist. LEXIS 12717, 8.  However, this leaves numerous employees who are not covered by the FLSA out in the cold.  With the FLSA, "Congress did not intend that the regulation of hours and wages should extend to the furthest reaches of federal authority." *McLeod v. Threlkeld*, 319 U.S. 491, 493 (1943).  Like the plaintiff in *McLeod* (319 U.S. 491 at 494)*,* numerous workers are not covered by the FLSA because they are either not "covered individuals" or their employers are not "covered enterprises".  *See Rivera v. Heights Landscaping, Inc.*, 2004 U.S. Dist. LEXIS 3746 (N.D. Ill. 2004); *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290 (1985). The Northern District's assertion that there is no need to permit a claim for retaliatory discharge, because the FLSA provides a remedy, cannot possibly apply to employees who are not covered by the FLSA.  Plaintiffs should not be allowed a double recovery,

but when the question of whether or not an employee is covered is often only resolved after a fact-intensive inquiry (*see Rivera*, 2004 U.S. Dist. LEXIS 3746), early dismissal of supplemental claims that are pleaded in the alternative cannot be the answer. Illinois courts have the solution.

> **4.   Given that Illinois courts are officially silent on the issue, but have endorsed the idea of recognizing retaliatory discharge in the context of an IMWL violation in *dicta*, the plain meaning of the words in the IMWL should be applied to the elements set forth in *Kelsay*.**

Quite simply, "[i]t is against public policy for an employer to pay to his employees an amount less than that fixed by" the Minimum Wage Law ("IMWL"). 820 ILCS 105/1 *et seq.* The Illinois Supreme Court has:

> recognized the limited and narrow tort of retaliatory discharge as an exception to the general rule of at-will employment. Balla v. Gambro, Inc., 145 Ill. 2d 492, 498-99 (1991), citing Kelsay v. Motorola, Inc., 74 Ill. 2d 172 (1978). To establish a cause of action for retaliatory discharge, a plaintiff must demonstrate that (1) he was discharged in retaliation for his activities; and (2) the discharge is in contravention of a clearly mandated public policy.
>
> \* \* \*
>
> While there is no precise definition of what constitutes clearly mandated public policy, a review of Illinois case law reveals that retaliatory discharge actions are allowed in two settings. The first situation is when an employee is discharged for filing, or in anticipation of the filing of, a claim under the Workers' Compensation Act (820 ILCS 305/1 et seq. (West 1992)). See Hinthorn v. Roland's of Bloomington, Inc., 119 Ill. 2d 526 (1988); Kelsay, 74 Ill. 2d 172. The second situation is when an employee is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as "whistle blowing."

*Jacobson v. Knepper & Moga, P.C.*, 185 Ill. 2d 372, 376 (1998).

Depriving employees of a remedy for retaliation, as the Northern District would do, must certainly have a chilling effect on an employee "whistleblower's" desire to come forward and report a violation of the IMWL. If an employee were afraid to even

complain about a violation for fear of being fired, why would she go so far as to report it? And to whom?

*Robbins v. Madison* said that in light of the express statutory language, "if an employee who is covered by the [IMWL] is discharged by his employer because he refuses to work for wages less than those set forth in the statute, his discharge would, in fact, violate a 'clear mandate of public policy' within the meaning of Hinthorn v. Roland's of Bloomington, Inc. (1988), 119 Ill. 2d 526, 519 N.E.2d 909, and entitle the employee to bring an action for retaliatory discharge."  193 Ill. App. 3d 379, 383 (Ill. App. Ct. 5th Dist. 1990) (in *dicta*).  In addition to *Chicon*, the defendants cite *Wilke v. Salamone*, 404 F. Supp. 2d 1040, for the proposition that the "Northern District has found that Illinois common law does not provide a retaliatory discharge remedy to plaintiffs who were discharged after complaining of alleged violations of the FLSA and the IMWL."  (Mtn. p. 5).  But even the Northern District must admit that it "could find no Illinois case to have ruled on the issue one way or the other . . . ."  *Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1078 (N.D. Ill. 2005) (Kennelly, J.). This alone is very instructive in light of the fact that *Robbins* (*dicta*) came down in 1990.

The Northern District's reluctance to recognize the tort's application to IMWL situations stems from a misunderstanding of the injury involved and an overemphasis on deterrent, rather than remedial, considerations.  In one example of the emphasis on deterrence, *Skelton* says that "the criminal penalties in the IMWL are sufficient to deter retaliation, and therefore, a civil right of action for retaliatory discharge is unnecessary." *Skelton*, 382 F. Supp. 2d 1068 at 1078.  This reasoning in *Skelton* ignores employees, who are not covered by the FLSA, and have no remedy against retaliation in case

deterrence fails.  *Skelton* also ignores the reality recognized by the Illinois Supreme Court.  When analyzing the Workers' Compensation Act, the Illinois Supreme Court said that a minor criminal penalty is not enough to deter retaliation:

> As we have noted, retaliatory discharge is offensive to the public policy of this State as stated in the Workmen's Compensation Act.  This policy can only be effectively implemented and enforced by allowing a civil remedy for damages, distinct from any criminal sanctions which may be imposed on employers for violating the Act after 1975.  The imposition of a small fine, enuring to the benefit of the State, does nothing to alleviate the plight of those employees who are threatened with retaliation and forgo their rights, or those who lose their jobs when they proceed to file claims under the Act.  It is conceivable, moreover, that some employers would risk the threat of criminal sanction in order to escape their responsibility under the Act.

*Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 185 (Ill. 1978) (citation omitted).  Coupled with the language of the IMWL itself, this is compelling mandate.

The rationale with regard to injury in *Wilke* and *Skelton* are indicative of how the Northern District blurs the key distinction between the IMWL and the Illinois Wage Payment and Collection Act 820 Ill. Comp. Stat. 115/1, *et seq*. ("IWPCA").  *Wilke* and *Skelton* both support the assertion that retaliatory discharge does not extend to IMWL situations by analogizing to the IWPCA.  Wilke, 404 F. Supp. 2d 1040 at 1050; *Skelton*, 382 F. Supp. 2d 1068, 1078.  In contrast to the IMWL, Illinois courts have held that retaliatory discharge does not extend to IWPCA situations.  *See McGrath v. CCC Information Svcs., Inc.*, 314 Ill. App. 3d 431, 443 (2000).  This makes sense because the IWPCA is concerned with the enforcement of contractual arrangments that are individual in nature.  Firing an employee over a contractual dispute does not offend public policy.  A contractual dispute between an individual employee and an employer truly must arise from a "private and individual grievance" as outlined in  *Geary v. Telular*

*Corp.*, 341 Ill. App. 3d 694, 701 (1st Dist. 2003).  On the other hand, firing an employee who complains about a violation of the IMWL is not a private matter.  Employers may not contract around the mandate to pay minimum wages and proper overtime compensation.

It is against public policy for an employer to pay to his employees an amount less than that fixed by the Minimum Wage Law.  Depriving employees of a remedy for retaliation, as the Northern District would do, must certainly have a chilling effect on an employee "whistleblower's" desire to come forward and report a violation of the IMWL.

Respectfully submitted,


/s/Paul Luka
PAUL LUKA

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on May 22, 2008, he served a copy of this certificate and the attached document on all attorneys of record by causing them to be issued through the Court's Electronic Case Filing System in accordance with FRCP 5(b)(2)(D), and LR5.9 of the Northern District of Illinois.


/s/Paul Luka
PAUL LUKA ARDC# 6288860


Roy P. Amatore, Esq.
Paul Luka, Esq.
AMATORE & ASSOCIATES, P.C.
120 S. State Street • Suite 400
Chicago, IL 60603
312.236.9825 tel.
312.236.9826 fax

# Exhibit A

LEXSEE 2002 U.S. DIST. LEXIS 21228

**MICHAEL C. CICHON, Plaintiff, vs. EXELON GENERATION CO., Defendant.**

**02 C 3441**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2002 U.S. Dist. LEXIS 21228*

**October 31, 2002, Decided**
**November 1, 2002, Docketed**

**DISPOSITION:** [*1] Motion to dismiss granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant former employer filed a motion pursuant to *Fed. R. Civ. P. 12(b)(1)* and *(6)* to dismiss plaintiff former employee's action in which the former employee claimed retaliatory discharge in violation of the Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201 et seq.*, and Illinois common law.

**OVERVIEW:** Count I of the former employee's complaint was for retaliation in violation of the FLSA, and Count II was for retaliatory discharge in violation of Illinois common law. The former employer moved to dismiss the FLSA retaliation claim under *Rule 12(b)(1)* for lack of subject matter jurisdiction. The court held that the former employer failed to state why the court lacked subject matter jurisdiction, and therefore denied the motion. Regarding the common law claim of retaliatory discharge, the former employer sought to dismiss the claim under *Rule 12(b)(6)* for failing to state a claim upon which relief could be granted. The court found that a cause of action for retaliatory discharge was unavailable to a plaintiff who had a remedy under the FLSA. Therefore, the court granted the former employer's motion to dismiss the common law count.

**OUTCOME:** The court denied the dismissal of the former employee's FLSA retaliation claim, but granted the dismissal of the former employee's common law retaliatory discharge claim, with prejudice.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
*Civil Procedure > Dismissals > General Overview*
*Criminal Law & Procedure > Accusatory Instruments > General Overview*
[HN1] The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. A complaint need only specify the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Labor & Employment Law > Discrimination > Retaliation > General Overview*
*Labor & Employment Law > Wrongful Termination > Remedies > General Overview*
[HN2] It is apparent from the cases that Illinois courts have recognized a claim for retaliatory discharge where the otherwise available remedies would not serve as an effective deterrent to future employer misconduct.

*Labor & Employment Law > Discrimination > Retaliation > Remedies > General Overview*
*Labor & Employment Law > Wrongful Termination > Remedies > General Overview*
[HN3] Illinois common law does not provide for a retaliatory discharge cause of action where an alternative

remedy (specifically that under the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*) provides effective deterrence to the complained-of conduct.

**COUNSEL:** For MICHAEL C CICHON, plaintiff: Jennifer Kay Soule, Soule, Bradtke & Lambert, Chicago, IL.

For MICHAEL C CICHON, plaintiff: Robert C. Seldon, Project On Liberty and the Workplace, Washington, DC.

For EXELON GENERATION CO, defendant: Kari Ann Krolikowski, Exelon Business Services Company, Chicago, IL.

For EXELON GENERATION CO, defendant: Douglas Alan Graham, Chicago, IL.

**JUDGES:** Charles P. Kocoras, Chief Judge, United States District Court.

**OPINION BY:** Charles P. Kocoras

**OPINION**

MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Defendant Exelon Generation Company's ("Exelon Generation") *Rule 12(b)(1)* and *(6)* motion to dismiss. For the reasons set forth below we grant the motion in part and deny it in part.

BACKGROUND

Because this is a motion to dismiss, we accept all well pleaded facts and allegations in the Complaint as true and draw all reasonable inferences in a light most favorable to Plaintiff Michael Cichon. *See Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993)*. [*2] Exelon Generation is a producer and wholesaler of energy that owns and operates five nuclear power stations in Illinois. Since February of 1998 until the events which gaverise to this action, Mr. Cichon was an Operations and Unit Supervisor at Exelon Generation's Byron Nuclear Power Station in Byron, Illinois. On at least six occasions, Exelon Generation issued written commendations or cash awards to Mr. Cichon in recognition of his outstanding performance as Operations

and Unit Supervisor. Exelon Generation named Mr. Cichon one of Byron Nuclear Power Station's Top Performing employees in 1999.

Prior to January 2000 Exelon Generation paid Mr. Cichon time-and-a-half for all hours worked in excess of forty per week. In January 2000 Exelon Generation determined that Mr. Cichon and nearly all of middle management were exempt from the Fair Labor Standards Act, *29 U.S.C. §§ 201 et seq.* ("FLSA"), and the Illinois Minimum Wage Law, *820 ILCS 105/1 et seq.* ("IMWL"). Accordingly, it changed its overtime-pay policy to the detriment of Mr. Cichon and most of middle management. Mr. Cichon repeatedly advised Exelon Generation that he objected to Exelon Generation's [*3] new overtime-pay policy. Moreover, Mr. Cichon organized and initiated a class action naming himself and four coworkers as plaintiffs against their employer's parent corporation, Exelon Corporation. The class action, entitled *Robert N. Myers, et al. v. Exelon Corporation*, No. 01 C 7399, was filed in this district on September 25, 2001. The action was filed under the FLSA and the IMWL on behalf of all categories of employees at all of Exelon Generation's five nuclear power stations.

On October 23, 2001, Exelon Generation gave Mr. Cichon sixty days to find another position in Exelon Generation's employ before being terminated and suggested that he apply for positions outside of the Byron Nuclear Power Station. On December 24, 2001, Mr. Cichon accepted a lower paying position at Commonwealth Edison Company ("ComEd"), another subsidiary of Exelon Corporation. It is Mr. Cichon's position that he was discharged in violation of the FLSA and Illinois common law. On May 14, 2002, he filed the present action naming only himself as plaintiff. The present action is based on facts occurring after the initiation of the class action. Mr. Cichon now complains of being fired in retaliation for [*4] his vocal and legal opposition to Exelon Generation's new overtime-pay policy. Count I of the complaint (the "Complaint") is for retaliation in violation of the FLSA. Count II is for retaliatory discharge in violation of Illinois common law.

The class action has since been dismissed with prejudice.

LEGAL STANDARD

[HN1] "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the

merits." *Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990)* (quoting *Triad Assocs., Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989)*). A complaint need only specify "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002)* (citing *Beanstalk Group, Inc. v. AM General Corp., 283 F.3d 856, 863 (7th Cir. 2002)*). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. [*5] With these principles in mind, we now address the motion before us.

## DISCUSSION

### I. Fair Labor Standards Act

Exelon Generation moves to dismiss the FLSA retaliation claim under *Rule 12(b)(1) of the Federal Rules of Civil Procedure* for lack of subject matter jurisdiction. Exelon Generation fails to state why this court lacks subject matter jurisdiction. Rather Exelon Generation implies that we lack subject matter jurisdiction because another action (the class action) is already pending that involves the same underlying factual circumstances. That case has since been dismissed. The *Rule 12(b)(1)* motion is, accordingly, denied.

### II. Illinois Common Law Retaliatory Discharge

Exelon Generation moves to dismiss the retaliatory discharge claim under *Rule 12(b)(6) of the Federal Rules of Civil Procedure* for failing to state a claim upon which relief can be granted. Exelon Generation states that a cause of action for retaliatory discharge is unavailable to a plaintiff who has a remedy under the FLSA. We agree.

Retaliatory discharge was first recognized as a cause of action in Illinois in *Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 384 N.E.2d 353, 23 Ill. Dec. 559 (Ill. 1978)*. [*6] *Jarmoc v. Consolidated Elec. Distribs., 1992 U.S. Dist. LEXIS 12717, 1992 WL 211511, *1 (N.D. Ill. 1992)*. In recognizing it, "the Illinois Supreme Court sought to promote the goal of providing an otherwise remediless employee with an effective remedy against an employer who had discharged him or her in contravention of the state's public policy." *Id* (citing *Driveaway and Truckaway Serv. v. Aaron Driveaway & Truckaway Co.,*

*781 F. Supp. 548, 552 (N.D. Ill. 1991)*).

In *Jarmoc*, a former employee brought a three-count complaint against her former employer for retaliatory discharge, violating the FLSA, and violating the IMWL. *Jarmoc, 1992 U.S. Dist. LEXIS 12717, 1992 WL 211511 at *1*. The employer moved to dismiss the retaliatory discharge claim on the grounds that the FLSA already provided plaintiff with a remedy sufficient to vindicate Illinois' public policy. *Id.* This court granted the motion stating:

> [HN2] It is apparent from the cases that [Illinois] courts have recognized a claim for retaliatory discharge where the otherwise available remedies would not serve as an effective deterrent to future employer misconduct. Therefore, defendant's motion to dismiss the common law retaliatory [*7] discharge claim should be decided on whether the alternate remedy, the FLSA, effectively deters retaliatory discharge. *It is this court's opinion that it does*.

*1992 U.S. Dist. LEXIS 12717, [WL] at *2* (emphasis added).

Despite that it is directly on point, Mr. Cichon urges us to disavow the holding in *Jarmoc*. All Mr. Cichon offers in support of its attempt to escape the holding in *Jarmoc* is case law that pre-dates *Jarmoc* and additional case law that is inapplicable. With respect to the pre-*Jarmoc* cases, we first note the obvious: these cases were available to this court at the time it issued *Jarmoc*. Additionally, none of the pre-*Jarmoc* cases on which Mr. Cichon relies dealt with the issue at hand: whether or not Illinois common law provides a retaliatory discharge claim to a plaintiff that has a remedy under the FLSA. *See* Plaintiff's Opposition at 11 (citing *Hartlein v. Illinois Power Co., 151 Ill. 2d 142, 601 N.E.2d 720, 176 Ill. Dec. 22 (Ill. 1992)*; *Hinthorn v. Roland's of Bloomington, Inc., 119 Ill. 2d 526, 519 N.E.2d 909, 116 Ill. Dec. 694 (Ill. 1988)*; *Boyles v. Greater Peoria Mass Transit Dist., 113 Ill. 2d 545, 499 N.E.2d 435, 101 Ill. Dec. 847 (Ill. 1986)*; [*8] *Midgett v. Sackett-Chicago, Inc., 105 Ill. 2d 143, 473 N.E.2d 1280, 85 Ill. Dec. 475 (Ill. 1984)*(all involving retaliatory discharge claims but not the Fair Labor Standards Act)). One of these cases, namely *Midgett*, was even explicitly examined in *Jarmoc. See*

*Jarmoc, 1992 U.S. Dist. LEXIS 12717, 1992 WL 211511* at *2 (citing *Midgett, 105 Ill. 2d 143, 473 N.E.2d 1280, 85 Ill. Dec. 475*).

With respect to the additional cases that Mr. Cichon cites, they address the wrong legal issue. Mr. Cichon cites these cases to support his irrelevant argument that the FLSA does not preempt a state cause of action for retaliatory discharge. *See* Plaintiff's Opposition at 11-12 ("The Illinois Supreme Court has definitively held 'that claims for retaliatory discharge are *not* generally preempted by Federal law . . .'") (citations omitted). Preemption is not the issue. *Jarmoc* makes no mention of preemption. *Jarmoc, 1992 U.S. Dist. LEXIS 12717, 1992 WL 211511.* Rather, *Jarmoc* holds that [HN3] Illinois common law does not provide for a retaliatory discharge cause of action where an alternative remedy (specifically that under the FLSA) provides effective deterrence to the complained-of conduct. *1992 U.S. Dist. LEXIS 12717,* [WL] at *2.

CONCLUSION

[*9] Based on the foregoing analysis, we grant the motion to dismiss in part and deny it in part. Count II of the Complaint is dismissed with prejudice.

Charles P. Kocoras

Chief Judge

United States District Court

Dated: October 31, 2002

# Exhibit B

LEXSEE 1992 U.S. DIST. LEXIS 12717

**BARBARA L. JARMOC, Plaintiff, v. CONSOLIDATED ELECTRICAL
DISTRIBUTORS, INC., d/b/a EFENGEE ELECTRIC SUPPLY COMPANY,
Defendant.**

**92 C 3697**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*1992 U.S. Dist. LEXIS 12717; 123 Lab. Cas. (CCH) P35,701*

**August 25, 1992, Decided
August 26, 1992, Docketed**

**DISPOSITION:**    [*1] Defendant's motion to dismiss
Count I of the complaint is granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant employer filed
a motion to dismiss the employee's claim for retaliatory
discharge in the employee's action that alleged that she
was wrongfully terminated for complaining about
nonpayment for overtime hours.

**OVERVIEW:** The employee filed an action against the
employer and alleged that she was wrongfully discharged
from her position after she complained to the employer
about nonpayment for overtime hours. The employee's
action alleged claims for retaliatory discharge and
violation of the Fair Labor Standards Act (act) of 1938,
*29 U.S.C.S. § 2201, et seq.* The employer filed a motion
to dismiss the claim for retaliatory discharge. The court
found that the act allowed an employer to be found liable
for punitive damages. Therefore, the court concluded that
by acting as an effective deterrent to employers who may
otherwise discharge employees who complain about
failure to pay overtime wages, the act provided an
effective alternative remedy. The court concluded that the
act's remedy eliminated the need for a common law
retaliatory discharge claim. Therefore, the employer's
motion to dismiss the retaliatory discharge claim was
granted.

**OUTCOME:** The employer's motion to dismiss the
employee's claim for retaliatory discharge was granted in

the employee's action that also alleged that the employer
violated the Fair Labor Standards Act.

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Wage & Hour Laws >
Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws >
Remedies > General Overview*
[HN1] *Section 207* of the Fair Labor Standards Act
(FLSA) provides that employees who work more than 40
hours in a week must be compensated at a rate of time
and one-half. *29 U.S.C.S. § 207(a)(1). Section 215* of the
FLSA provides that an employer may not discharge or
otherwise discriminate against an employee because the
employee has filed a complaint or initiated a proceeding
related to the Act. *§ 215(a)(3).*

*Labor & Employment Law > Wrongful Termination >
Remedies > Compensatory Damages*
*Labor & Employment Law > Wrongful Termination >
Remedies > Punitive Damages*
*Torts > Damages > Punitive Damages > Award
Calculations > General Overview*
[HN2] The Fair Labor Standards Act (act), *29 U.S.C.S. §
216(b)* provides that any employer who violates the
provisions of §§ 6 or 7 of this act shall be liable to the
employee or employees affected in the amount of their
unpaid minimum wages, or their unpaid overtime

1992 U.S. Dist. LEXIS 12717, *1; 123 Lab. Cas. (CCH) P35,701

compensation, as the case may be, and in an additional equal amount as liquidated damages. While this section provides for liquidated damages rather than punitive damages, the additional penalty which it imposes on an employer certainly can be construed as having a deterrent effect. Moreover, *29 U.S.C.S. § 215(a)* provides that any person who willfully violates any of the provisions of *§ 215* shall upon conviction thereof be subject to a fine of not more than $ 10,000, or to imprisonment for not more that six months, or both. The possible imposition of criminal sanctions certainly vindicates the public policy of prohibiting the discharge of an employee for complaining about the failure to pay overtime wages.

**JUDGES:** Kocoras

**OPINION BY:** CHARLES P. KOCORAS

**OPINION**

### *MEMORANDUM OPINION*

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on defendant's motion to dismiss Count I of the complaint pursuant to *Rule 12(b)(6) Fed. R. Civ. P.* for failure to state a claim upon which relief may be granted. For the reasons set forth below, the motion is granted, and Count I is dismissed.

### BACKGROUND

Plaintiff Barbara Jarmoc ("Jarmoc") filed this three-count complaint alleging that she was wrongfully discharged from her position as a secretary and clerical worker for defendant Consolidated Electrical Distributors, Inc. ("Consolidated") after she complained to defendant about nonpayment for the overtime hours she had worked.

Jarmoc alleges that because she was a "non-exempt" employee, Consolidated was obligated to pay her time and one-half for any hours worked in excess of 40 during any work week. Jarmoc claims that during the summer of 1990, she was regularly required to work more than 40 hours per week, for which she did not receive overtime pay. Jarmoc alleges that she was terminated on November 26, 1991 as the result of her complaints [*2] about the lack of overtime pay.

In her complaint, Jarmoc states claims for retaliatory discharge (Count 1), violation of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, *29 U.S.C. § 201 et seq.* (Count II), and violation of the Illinois Minimum Wage Law, as amended, Ill.Rev.Stat. ch. 48, P 1001 *et seq.* (Count III). Consolidated now moves to dismiss Jarmoc's claim for retaliatory discharge ("Count I") for failure to state a claim upon which relief may be granted. Consolidated argues Jarmoc is precluded from recovery under the tort of retaliatory discharge because the FLSA provides a statutory remedy which is sufficient to vindicate the public policy which Consolidated allegedly contravened.

### DISCUSSION

Consolidated argues that the claim for retaliatory discharge must be dismissed because an adequate statutory remedy is already available under the FLSA. [1] The tort of retaliatory discharge was first recognized in Illinois in *Kelsay v. Motorola, Inc., 74 Ill.2d 172, 23 Ill. Dec. 559, 384 N.E.2d 353 (1978)*, where an employee was discharged in retaliation for filing a worker's compensation claim against her employer. In [*3] recognizing the tort, the Illinois Supreme Court sought to promote the goal of providing an otherwise remediless employee with an effective remedy against an employer who had discharged him or her in contravention of the state's public policy. *Driveaway & Truckaway Service, Inc., v. Aaron Driveaway & Truckaway Co., 781 F. Supp. 548, 552 (N.D. Ill. 1991).* The *Kelsay* court supported punitive damages as "a warning and example to deter defendant and others from committing like violations in [the] future." *Kelsay, 384 N.E.2d at 354.* Yet courts have expressed concern about expanding the scope of the tort. *See e.g. Fellhauer v. Geneva, 142 Ill.2d 495, 154 Ill.Dec. 649, 654, 568 N.E.2d 870, 875 (1991)*(stating that the tort of retaliatory discharge is a "limited and narrow cause of action tort of retaliatory discharge was first recognized in Illinois in *Kelsay v. Motorola, Inc., 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978)*, where an employee was discharged in retaliation for filing a worker's compensation claim against her employer. [*4] In recognizing the tort, the Illinois Supreme Court sought to promote the goal of providing an otherwise remediless employee with an effective remedy against an employer who had discharged him or her in contravention of the state's public policy. *Driveaway & Truckaway Service, Inc., v. Aaron Driveaway & Truckaway Co., 781 F. Supp. 548, 552 (N.D. Ill. 1991).* The *Kelsay* court supported

1992 U.S. Dist. LEXIS 12717, *4; 123 Lab. Cas. (CCH) P35,701

punitive damages as "a warning and example to deter defendant and others from committing like offenses in [the] future." *Kelsay, 384 N.E.2d at 354*. Yet courts have expressed concern about expanding the scope of the tort. *See e.g. Fellhauer v. Geneva, 142 Ill.2d 495, 154 Ill.Dec. 649, 654, 568 N.E.2d 870, 875 (1991)*(stating that the tort of retaliatory discharge is a "limited and narrow cause of action").

> 1    [HN1] *Section 207* of the FLSA provides that employees who work more than forty hours in a week must be compensated at a rate of time and one-half. *29 U.S.C. § 207(a)(1)*. Section 215 of the FLSA provides that an employer may not discharge or otherwise discriminate against an employee because the employee has filed a complaint or initiated a proceeding related to the Act. *29 U.S.C. § 215(a)(3)*.

[*5]  In cases following *Kelsay,* courts have refused to recognize retaliatory discharge claims unless recognition was necessary to further the goals expressed in *Kelsay. Driveaway,* 781 F. Supp. at 551-53; *Cromley v. Board of Education, 699 F. Supp. 1283, 1297 (N.D. Ill. 1988)*(Moran, J.); *Gutierrez v. Chicago, 605 F. Supp. 973 (N.D. Ill. 1985)*(Rovner, J.); *Busa v. Barnes, 646 F. Supp. 615, 617-18 (N.D. Ill. 1986)*(Norgle, J.). That is, the courts have not recognized a retaliatory discharge claim unless there was no other remedy that would vindicate the public policy allegedly contravened.

In *Midgett v. Sackett-Chicago, Inc., 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984)*, the plaintiff was discharged after filing a worker's compensation claim for injuries sustained in the course of employment. Without exhausting available remedies under the collective bargaining agreement, plaintiff filed a common law action for retaliatory discharge. The Illinois Supreme Court upheld the plaintiff's right to maintain the common law retaliatory discharge action notwithstanding [*6] the availability of alternative remedies. In so doing, the Court focused on the fact that in a claim for retaliatory discharge, the plaintiff would secure a complete remedy due to the availability of punitive damages against the employer. Following *Kelsay,* the Court emphasized the necessity of protecting the applicable public policy through the deterrent effect against improper employer actions by punitive damages. Specifically, the Court stated:

If there is no possibility that an employer can be

liable in punitive damages, not only has the employee been afforded an incomplete remedy, but there is no available sanction against a violator of an important public policy of this state.

*Midgett, 473 N.E.2d at 1284*. The Court held that merely providing job reinstatement and back pay did not serve to protect the public policy at issue as it failed to provide an effective deterrent to improper employer conduct. *Id. at 1283*.

It is apparent from the cases that courts have recognized a claim for retaliatory discharge where the otherwise available remedies would not serve as an effective deterrent to future employer misconduct. Therefore, [*7] defendant's motion to dismiss the common law retaliatory discharge claim should be decided on whether the alternate remedy, the FLSA, effectively deters retaliatory discharge. It is this court's opinion that it does.

Defendant argues that the remedy provided by *29 U.S.C. § 216(b)* provides a wronged employee with a remedy for the discharge, and effectively deters such improper discharge. [HN2] *29 U.S.C. § 216(b)* provides that:

Any employer who violates the provisions of Section 6 or Section 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . .

*29 U.S.C. 216(b)*. While this section provides for liquidated damages rather than punitive damages, the additional penalty which it imposes on an employer certainly can be construed as having a deterrent effect. Moreover, *29 U.S.C. § 215(a)* provides:

Any person who willfully violates any of the provisions of section 15 [*29 U.S.C. § 215*] shall upon conviction thereof be subject to a fine of not more than $ 10,000, or to imprisonment for not more that six months, or [*8] both . . .

*29 U.S.C. § 215(a)*. The possible imposition of criminal sanctions certainly vindicates the public policy of prohibiting the discharge of an employee for complaining about the failure to pay overtime wages. Therefore, we conclude that by acting as an effective

Case 1:08-cv-01493   Document 25-3   Filed 05/22/2008   Page 5 of 5

Page 4

1992 U.S. Dist. LEXIS 12717, *8; 123 Lab. Cas. (CCH) P35,701

deterrent to employers who may otherwise discharge employees who complain about failure to pay overtime wages, the FLSA provides an effective alternative remedy, thus eliminating the need for a common law retaliatory discharge claim.

Because the available alternate remedy, the FLSA, does in fact provide a deterrent to the proscribed conduct, as well as a remedy for the discharged employee, we hold that there is no need to permit a claim for retaliatory discharge. Therefore, defendant's motion to dismiss Count I of the complaint is granted.

**CONCLUSION**

For the reasons set forth above, defendant's motion to dismiss Count I of the complaint is granted.

Charles P. Kocoras

United States District Judge

Dated: August 25, 1992

# Exhibit C

LEXSEE 2004 U.S. DIST. LEXIS 3746

**SANTOS RIVERA and ARTURO MARTINEZ, A.K.A. RAFAEL ZUNIGA, Plaintiffs, v. HEIGHTS LANDSCAPING, INC. and GEORGE KOSTOPOULOS, Defendants.**

**No. 03 C 6428**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2004 U.S. Dist. LEXIS 3746*

**March 4, 2004, Decided
March 5, 2004, Docketed**

**DISPOSITION:**     [*1] Defendants' motion to dismiss for lack of subject matter jurisdiction denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, landscapers, worked for defendants, a company and its owner, and claimed that the company and its owner failed to pay them all of the overtime wages they had earned, thus violating the Fair Labor Standards Act (FLSA), specifically *29 U.S.C.S. § 207*, and state law. The company and owner claimed that the FLSA was inapplicable, and therefore the court lacked jurisdiction and the landscapers' claims should be dismissed.

**OVERVIEW:** The company's annual sales for the relevant period were less than the $ 500,000 minimum, so they were not subject to enterprise coverage under the FLSA. The owner and company further argued that the landscapers were not engaged in commerce or the production of goods for commerce, so neither landscaper was a covered individual. Whether the landscapers fell within the protection of the FLSA was an issue regarding the merits of their claims, not the court's jurisdiction. The critical issue was what made an employee engaged in the production of goods for commerce. The landscapers focused on the FLSA's definition of production. The flaw in this argument was that *29 U.S.C.S. § 203(j)* addressed only what constituted production of goods. It said nothing about the "for commerce" requirement. As part of their landscaping work, the landscapers evidently planted trees and shrubs for customers. Supplying the trees or shrubs, constituted a sale of goods. Whether any of those plants or shrubs were specially ordered through interstate commerce may have made a difference. Thus, the landscapers could take discovery regarding whether any of the plants and shrubs were specially ordered.

**OUTCOME:** The owner's and the company's motion to dismiss for lack of subject matter jurisdiction was denied.

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Enterprise Coverage*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Tax Law > State & Local Taxes > Sales Tax > General Overview*
[HN1] The Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, overtime provisions apply if either the employer is a covered enterprise or the plaintiffs are covered individuals. A covered enterprise is one that (1) has employees engaged in commerce or the production of goods for commerce or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) is an enterprise whose annual gross volume of sales made or business done is not less than $ 500,000 (exclusive of excise taxes at the retail level that are separately stated). *29 U.S.C.S. § 203(s)(1)(A)(i-ii)*. If enterprise coverage applies, all of the enterprise's

Case 1:08-cv-01493     Document 25-4     Filed 05/22/2008     Page 3 of 8

Page 2
2004 U.S. Dist. LEXIS 3746, *1

employees are protected under the FLSA, even if they are not personally involved in interstate commerce. The FLSA also protects individual employees who are engaged in commerce or in the production of goods for commerce, *29 U.S.C.S. § 207(a)(1)*, regardless whether their employers qualify as covered enterprises.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > Statutory Sources*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Enterprise Coverage*
[HN2] A challenge that an employer is not a covered enterprise under Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, is properly construed as a challenge to the merits, not to subject matter jurisdiction. Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as a predicate for relief--a merits-related determination. In cases in which a federal statute both provides the basis for jurisdiction and creates the cause of action, the court should find that it has jurisdiction over the case and deal with the defendant's challenge on the merits.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Statutory Application > Title VII of the Civil Rights Act of 1964*
[HN3] The failure to satisfy a federal statutory definition is not a defect of subject matter jurisdiction but an ordinary failure to meet a statutory requirement.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Enterprise Coverage*
[HN4] Under regulations promulgated under the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, depending on the circumstances, annual gross revenue is determined by examining either the enterprise's earnings during a fiscal year (i.e., a tax year) or its earnings during the twelve months preceding the beginning of a given

fiscal quarter (i.e., the rolling-quarter analysis). *29 C.F.R. § 779.266*.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN5] In determining whether an employee is a covered individual under the Fair Labor Standards Act, *29 U.S.C.S. § 201*, the focus is on the nature of the activities of the employee, rather than the general character of the employer's business.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN6] For purposes of the Fair Labor Standards Act, *29 U.S.C.S. § 201*, an employee is engaged in commerce if the employee's work activities are actually in or so closely related to the movement of commerce as to be a part of it.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
*Transportation Law > Interstate Commerce > Definition of Commerce*
[HN7] See *29 U.S.C.S. § 203(j)*.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Enterprise Coverage*
[HN8] The "for commerce" requirement in the Fair Labor Standards Act, *29 U.S.C.S. § 201*, is an essential for individual coverage.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
*Transportation Law > Interstate Commerce > Definition of Commerce*
[HN9] Enterprise coverage extends beyond employers who have employees engaged in commerce or in the production of goods for commerce to include employers that have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person. *29 U.S.C.S. § 203(s)(1)(A)(i)*.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN10] Individual coverage, under the Fair Labor

2004 U.S. Dist. LEXIS 3746, *1

Standards Act, *29 U.S.C.S. § 201*, remains limited to those employees directly engaged in interstate commerce or in the production of goods for interstate commerce. Moreover, the "for commerce" requirement is prospective. As explained in the relevant federal regulations, goods are produced for commerce where the employer intends, hopes, expects, or has reason to believe that the goods or any unsegregated part of them will move (in the same or in an altered form or as a part or ingredient of other goods) in interstate commerce. *29 C.F.R. § 776.21*. Thus, production of goods for commerce includes all steps which lead to readiness for putting goods into the stream of commerce. Mere use, physical touching, or consumption of goods that have traveled in interstate commerce is not enough.

***Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview***
[HN11] Federal courts interpret the Fair Labor Standards Act's, *29 U.S.C.S. § 201*, broad definition of production to include the handling of goods that have moved in interstate commerce, even if the employee's specific business activity is local.

**COUNSEL:** For SANTOS RIVERA, ARTURO MARTINEZ aka Rafael Jr Zuniga, plaintiffs: Ronald Barry Schwartz, Hedberg, Tobin, Flaherty & Whalen, P.C., Chicago, IL. Vince H Beckman, III, Farmwork Advocacy Project, Chicago, IL.

For HEIGHTS LANDSCAPING, INC., defendant: Elizabeth Hubbard, John C. O'Connor, Katherine A Parker, Hubbard & O'Connor, Ltd., Chicago, IL. Thomas A. Zimmerman, Jr., Zimmerman and Associates, Chicago, IL.

For GEORGE KOSTOPOULOS, JR, defendant: Thomas A. Zimmerman, Jr., Zimmerman and Associates, Chicago, IL.

**JUDGES:** NAN R. NOLAN, United States Magistrate Judge.

**OPINION BY:** NAN R. NOLAN

**OPINION**

**MEMORANDUM OPINION & ORDER**

Plaintiffs Santos Rivera and Arturo Martinez worked as landscapers for defendant Heights Landscaping, Inc. ("Heights"). They contend that Heights and its owner, defendant George Kostopoulos, failed to pay them all of the overtime wages they had earned, thus violating the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 207*, and the Illinois Minimum Wage Law, *820 ILCS 105/4a and 105/12*. Defendants contend that the FLSA is inapplicable, and therefore argue that [*2] the court lacks subject matter jurisdiction over plaintiffs' FLSA claims and should dismiss plaintiffs' complaint under *Fed. R. Civ. P. 12(b)(1)*. [1] The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to *28 U.S.C. § 636(c)*. For the following reasons, defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

> 1  If the FLSA claims were dismissed, the court would have discretion to decline to exercise supplemental jurisdiction over the state law claims. *Sartor v. Spherion Corp., 2003 U.S. Dist. LEXIS 21054, No. 02 C 4312, 2003 WL 22765049, at *6 (N.D. Ill. Nov. 21, 2003)*; *28 U.S.C. § 1367(c)(3)*.

**DISCUSSION**

**A. The Court Has Subject Matter Jurisdiction**

[HN1] The FLSA's overtime provisions apply if either the employer is a covered enterprise or the plaintiffs are covered individuals. *Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 295 n. 8, 85 L. Ed. 2d 278, 105 S. Ct. 1953 (1985)*. [*3] A covered enterprise is one that (1) "has employees engaged in commerce or the production of goods for commerce or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and (2) "is an enterprise whose annual gross volume of sales made or business done is not less than $ 500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]" *29 U.S.C. § 203(s)(1)(A)(i-ii)*. If enterprise coverage applies, all of the enterprise's employees are protected under the FLSA, even if they are not personally involved in interstate commerce. *See, e.g., Rodriguez v. Corvel Corp., 2001 U.S. Dist. LEXIS 25713, 2001 WL 685734, at *4 (W.D. Tex. Mar. 29, 2001)*; *Boekemeier v. Fourth Universalist Soc'y in the City of New York, 86 F. Supp. 2d 280, 284 (S.D.N.Y. 2000)*. The FLSA also protects individual employees who are "engaged in

commerce or in the production of goods for commerce," *29 U.S.C. § 207(a)(1)*, regardless whether their employers qualify as covered enterprises. *See, e.g., Marshall v. Whitehead, 463 F. Supp. 1329, 1341 (M.D. Fla. 1978).* [*4]

According to defendants, Heights' annual sales for the relevant period were less than the $ 500,000 minimum, so they are not subject to enterprise coverage. Defendants further argue that plaintiffs were not engaged in commerce or the production of goods for commerce, so neither plaintiff is a covered individual. Thus, according to defendants, the court lacks subject matter jurisdiction over plaintiffs' FLSA claims. In response, plaintiffs contend that defendants' objections go to the merits of the case, not to whether the court has subject matter jurisdiction over the claims.

Plaintiffs are correct. Whether plaintiffs fall within the protection of the FLSA is an issue regarding the merits of their claims, not the court's jurisdiction. *Velez v. Vassallo, 203 F. Supp. 2d 312, 330-332 (S.D.N.Y. 2002)* [HN2] (challenge that employer is not a covered enterprise under FLSA is properly construed as a challenge to the merits, not to subject matter jurisdiction); *Reich v. Troyer, 1996 U.S. Dist. LEXIS 5558, Civ. A. 96-0471, 1996 WL 198111, at *2 (E.D. La. Apr. 23, 1996)* (same). "Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need [*5] and ability to prove the defendant bound by the federal law asserted as a predicate for relief--a merits-related determination." 2 Moore's Fed. Practice § 12.30(1) (3d ed. 2000). In cases in which a federal statute both provides the basis for jurisdiction and creates the cause of action, the court "'should find that it has jurisdiction over the case and deal with the defendant's challenge on the merits.'" *Troyer, 1996 U.S. Dist. LEXIS 5558, 1996 WL 198111 at *2* (quoting *Clark v. Tarrant County, Texas, 798 F.2d 736, 741-42 (5th Cir. 1986)*). Although the Seventh Circuit has not yet addressed this issue with respect to the FLSA, it has repeatedly held that [HN3] the failure to satisfy a federal statutory definition "is not a defect of subject matter jurisdiction but an ordinary failure to meet a statutory requirement." *Sapperstein v. Hager, 188 F.3d 852, 855 n.1 (7th Cir. 1999)* (citing rulings in ADEA and Title VII cases, but purposefully refraining from addressing the issue as it relates to the FLSA). This court finds the same reasoning applicable to FLSA cases, and follows *Verez* and *Troyer.* Defendants' motion to dismiss

for lack of subject matter jurisdiction [*6] is therefore denied.

The question then is how to handle defendants' challenge to the merits. It is within the court's discretion to convert the motion to dismiss to a motion for summary judgment. *Fed. R. Civ. P. 12(b); Troyer, 1996 U.S. Dist. LEXIS 5558, 1996 WL 198111 at *2.* The court declines to do so in this case, however, preferring instead to narrow certain legal issues and to allow the parties to conduct limited discovery (as discussed next). Either party may then file a motion for summary judgment if warranted.

**B. The Court Will Allow Limited Discovery**

Plaintiffs contend that they should be allowed to take discovery regarding (i) the annual gross volume of sales made or business done by Heights ("gross revenue"), and (ii) whether any of the materials or goods plaintiffs used in the course of their work for Heights originated out of state. The court addresses these issues in turn.

[HN4] Depending on the circumstances, annual gross revenue is determined by examining either the enterprise's earnings during a fiscal year (*i.e.*, a tax year) or its earnings during the twelve months preceding the beginning of a given fiscal quarter (*i.e.*, the [*7] rolling-quarter analysis). *See 29 C.F.R. § 779.266.* Regarding its annual gross revenue, Heights submitted an affidavit from its accountant and copies of the relevant income tax returns, showing that Heights' gross revenue amounted to $ 316,751 in 1999, $ 400,728 in 2000 and $ 442,007 in 2001--all well below the $ 500,000 threshold. In case Heights is not entitled to rely on those annual returns to qualify for exemption from the FLSA for 2002 because the rolling quarter analysis applies instead (an issue the court does not decide at this time), Heights also submitted copies of financial statements showing its quarterly sales from the quarter ending March 31, 2001 through the quarter ending September 30, 2002. According to defendants, the quarterly financial statements show that under the rolling quarter analysis, the first time Heights potentially qualified as a covered enterprise under the FLSA was at the end of the third quarter of 2002 (September 30, 2002), when its gross revenue for the previous twelve months first exceeded $ 500,000. [2]

2   By September 30, 2002, plaintiff Rivera was no longer employed by Heights, and plaintiff

2004 U.S. Dist. LEXIS 3746, *7

Martinez's employment terminated less than two months later.

[*8] Defendants argue that allowing discovery on these financial matters will not reveal any new information. That may well be true, but plaintiffs are entitled to test the accuracy of Heights' proffered financial information if they choose to do so. The parties therefore have sixty days to conduct discovery on this issue.

Plaintiffs also contend they should be allowed to take discovery regarding whether, in the course of their work for Heights, they used goods or materials that originated out of state, *i.e.* that had traveled in interstate commerce. As the court understands their position, plaintiffs believe that such information is relevant to determining whether they are covered individuals. Specifically, plaintiffs argue that if discovery reveals that during the course of their landscaping work for Heights they used fertilizer, plant material, and/or other supplies that originated out of state, then plaintiffs were engaged in the production of goods for commerce and are covered individuals under the FLSA. This argument is flawed, however, because plaintiffs confuse information relevant to establishing *enterprise* coverage with information relevant to establishing *individual* [*9] coverage. As explained below, whether plaintiffs used goods or materials that traveled in interstate commerce has no bearing on whether plaintiffs are covered individuals under the FLSA because use of such goods or materials is insufficient to establish that plaintiffs were personally "engaged in commerce" or "engaged in the production of goods for commerce."

[HN5] In determining whether an employee is a covered individual under the FLSA, the focus is on "the nature of the activities of the employee, rather than the general character of the employer's business." *Whitehead, 463 F. Supp. at 1342* (citing *Mitchell v. Lublin McGaughy & Assocs., 358 U.S. 207, 209, 3 L. Ed. 2d 243, 79 S. Ct. 260 (1959)).* Plaintiffs do not contend they were engaged in commerce. [3] Rather, they argue if they handled materials that had traveled in interstate commerce, then they were engaged in the production of goods for commerce.

3    [HN6] An employee is engaged in commerce if the employee's work activities are "'actually in or so closely related to the movement of commerce as to be a part of it.'" *Boekemeier, 86*

*F. Supp. 2d at 286* (quoting *McLeod v. Threlkeld, 319 U.S. 491, 497, 87 L. Ed. 1538, 63 S. Ct. 1248 (1943)).* Work activities that "'affect or indirectly relate to interstate commerce'" are not enough. *Id.*

[*10] The critical issue is what makes an employee engaged in the "production of goods for commerce." Plaintiffs focus on the FLSA's definition of production. [HN7] For purposes of the FLSA, an employee is deemed to be "engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State." *29 U.S.C. § 203(j).* From this definition, plaintiffs argue that if they used goods that originated in another state during their employment, they "handled or transported" those goods within the meaning of *§ 203(j)*, [4] and thus were engaged in the production of goods for commerce. The flaw in this argument is that *§ 203(j)* addresses only what constitutes production of goods. It says nothing about the "for commerce" requirement.

4    The court assumes, without deciding, that such use constitutes "handling" within the meaning of *§ 203(j).*

[*11] [HN8] The "for commerce" requirement is essential for individual coverage. To explain this point, some background on the FLSA is warranted. "Prior to the introduction of enterprise coverage in 1961, the only individuals covered under the Act were those engaged directly in interstate commerce or in the production of goods for interstate commerce. Enterprise coverage substantially broadened the scope of the Act to include any employee of an enterprise engaged in interstate commerce, as defined by the Act." *Tony & Susan Alamo Found., 471 U.S. at 295 n. 8.* [HN9] Enterprise coverage extends beyond employers who have employees engaged in commerce or in the production of goods for commerce to include employers that have "employees handling, selling, or otherwise working on *goods or materials that have been moved in* or produced for commerce by any person." *29 U.S.C. § 203(s)(1)(A)(i)* (emphasis added). So there likely would be enterprise coverage for plaintiffs if during the course of their work they used goods or materials that originated in another state, and Heights satisfies the $ 500,000 minimum. *See, e.g., Radulescu v. Moldowan, 845 F. Supp. 1260, 1264 (N.D. Ill. 1994)* [*12] (FLSA enterprise coverage applies to local

businesses that employ workers who handle goods or materials that have traveled in interstate commerce).

[HN10] Individual coverage, in contrast, remains limited to those employees directly engaged in interstate commerce or in the production of goods for interstate commerce. Moreover, the "for commerce" requirement is prospective. As explained in the relevant federal regulations, goods are produced for commerce "where the employer intends, hopes, expects, or has reason to believe that the goods or any unsegregated part of them *will move* (in the same or in an altered form or as a part or ingredient of other goods)" in interstate commerce. *29 C.F.R. § 776.21* (emphasis added). Thus, production of goods for commerce "includes all steps . . . which lead to readiness for *putting goods into the stream of commerce."* 51B C.J.S. Labor Relations § 1135 (2004) (emphasis added). "Mere use, physical touching, or consumption of goods" that have traveled in interstate commerce is not enough. *Joles v. Johnson County Youth Serv. Bureau, Inc., 885 F. Supp. 1169 (S.D. Ind. 1995).* Plaintiffs cannot establish individual [*13] coverage merely by showing that in the course of their work they used rakes, fertilizers, or other goods that originated out of state.

Plaintiffs reliance on *Figueroa v. America's Custom Brokers, Inc., 48 F. Supp. 2d 1372, 1376 (S.D. Fla. 1999),* does not persuade the court otherwise. Addressing individual coverage under the FLSA, the *Figueroa* court stated that [HN11] federal courts interpret the FLSA's broad definition of production "to include the handling of goods that have moved in interstate commerce, even if the employee's specific business activity is local." *Id.* But in so finding, the *Figueroa* court relied on two cases that were discussing enterprise coverage, not individual coverage. [5] The difference between the two, as explained above, is significant because enterprise coverage is broader in scope. [6] Further, the *Figueroa* court did not address the "for commerce" requirement.

> 5   The *Figueroa* court relied on *Brock v. Hamad, 867 F.2d 804, 808 (4th Cir. 1989)* and *Radulescu, 845 F. Supp. at 1264,* both of which were discussing enterprise coverage.

[*14]

> 6   Additionally, the facts in *Figueroa* are distinguishable because the connection to interstate commerce was clear. The *Figueroa* plaintiffs--warehouse workers who loaded and unloaded fish--cleared certain goods for Customs,

resulting in the court's logical conclusion that their activities were "connected with the receipt and distribution of goods across State lines." *Figueroa, 48 F. Supp. 2d at 1375.*

For purposes of individual coverage, it makes no difference whether plaintiffs used rakes, fertilizers, etc. that previously traveled in interstate commerce. There is one issue that could be relevant, however. As part of their landscaping work, plaintiffs evidently planted trees and shrubs for customers. Supplying the trees or shrubs, as plaintiffs point out, constitutes a sale of goods (as well as the service of physically planting them). Whether any of those plants or shrubs were specially ordered through interstate commerce (rather than being purchased from available stock at local nurseries) may make a difference. *See Joles, 885 F. Supp. at 1179* (no individual [*15] coverage for plaintiff who purchased food and supplies from local retailers; when goods, which were not specially ordered, reached local retailers, their interstate journey ended). Plaintiffs may take discovery regarding whether any of the plants and shrubs were specially ordered for plaintiffs' customers. [7] Aside from that limited exception, to the extent plaintiffs seek discovery regarding the sources of origin of the goods or materials used during the course of their landscaping work in order to establish individual coverage, that request is denied.

> 7   The court reminds plaintiffs that for individual coverage, the focus is on their personal work activity. Even if Heights specially ordered some plants, that information will be of no use to plaintiffs unless they were personally involved with the special order (*e.g.,* through ordering, transporting, or planting).

However, discovery regarding the sources of the goods and materials Heights' employees (including but not limited to plaintiffs) used in the course [*16] of their employment is also relevant to establishing the first prong of enterprise coverage, *i.e., 29 U.S.C. § 203(s)(1)(A)(i). See Radelescu, 845 F. Supp. at 1264* (enterprise coverage extends "to companies that use products that have moved in interstate commerce"). Unless Heights is willing to concede that its business satisfies the first prong, plaintiffs will be allowed such discovery for purposes of establishing enterprise coverage.

**CONCLUSION**

2004 U.S. Dist. LEXIS 3746, *16

As explained above, defendants' motion to dismiss for lack of subject matter jurisdiction is denied. The parties have sixty days from the date of this order to conduct discovery regarding (1) Heights' annual gross volume of sales made or business done, (2) whether any plants or shrubs were specially ordered for plaintiffs' customers, and (3) whether any of the goods and materials Heights' employees used in the course of their employment were moved in or produced for commerce.

NAN R. NOLAN

United States Magistrate Judge

Dated: March 4, 2004