**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CARLOS MARTINEZ, FRANCISCA MARTINEZ, ARMANDO CELESTINO, JUAN CASTILLO, and SILVINA MARQUEZ, on behalf of themselves and all other employees similarly situated, known and unknown, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | No. 08 C 1493 |
| BELLA FLOWERS & GREENHOUSE, INC., an Illinois corporation, RAMON ORTIZ, individually, and MARIO ORTIZ, individually, | ) ) ) ) ) | The Honorable George W. Lindberg  Magistrate Judge Jeffrey Cole |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS VI AND VII AND CLAIM FOR ATTORNEYS' FEES IN COUNT III OF COMPLAINT**

Defendants Bella Flowers & Greenhouse, Inc., Ramon Ortiz, and Mario Ortiz, by their attorneys, Schoenberg, Finkel, Newman & Rosenberg, LLC, as their Reply in Support of Motion to Dismiss Counts VI and VII and Claim for Attorneys' Fees in Count III of the Complaint herein, state as follows:

**INTRODUCTION**

In their Opposition to Defendants' Motion to Dismiss Counts VI and VII and Claim for Attorneys' Fees in Count III of Complaint (*hereinafter*, the "Opposition"), Plaintiffs would have this Court overlook the law applicable to the causes of action they assert in Counts VI and VII and to their attorneys' fee claim in Count III of the Complaint. Plaintiffs assert that under the "fair notice" standard of the Federal Rules of Civil Procedure, they have sufficiently pleaded the elements of

retaliation under the Fair Labor Standards Act (*hereinafter*, the "FLSA"), 29 U.S.C. § 215, with respect to all Plaintiffs. (Opposition, pp. 2-3). Moreover, Plaintiffs contend that they do not have to comply with the requirements of the Attorneys Fees in Wage Action Act (*hereinafter*, the "AFWAA"), 705 ILCS 225/1, because Defendants supposedly so intimidated Plaintiffs that they feared requesting access to their payroll records. (Opposition, p.3). Finally, Plaintiffs argue that this Court should permit their retaliatory discharge count (Count VII) to proceed even four Northern District decisions have unanimously ruled that there is no such cause of action recognized under Illinois law. (Opposition, pp. 3-8). None of Plaintiffs' contentions have any merit whatsoever.

It is clear that the Complaint in this matter fails to state claims for FLSA retaliation applicable to all Plaintiffs, for attorneys fees under the AFWAA and for retaliatory discharge. Therefore, Counts VI and VII and the claim for attorneys fees in Count III of the Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## ARGUMENT

I.    **THE ALLEGATIONS OF COUNT VII OF THE COMPLAINT ARE INSUFFICIENT TO STATE A CLAIM FOR FLSA RETALIATION FOR THE PLAINTIFFS OTHER THAN CARLOS MARTINEZ AND ARMANDO CELESTINO**

Plaintiffs' assertion that Count VII of the Complaint is adequate to place Defendants on notice and satisfies the elements of retaliation under the FLSA (Opposition, p. 3) does not withstand scrutiny. A retaliation claim under the FLSA requires a plaintiff to plead that (1) she engaged in statutorily protected activity; (2) she suffered an adverse action by her employer or former employer; and (3) a causal connection exists between the protected activity and the adverse action. Beltran v. Brentwood North Healthcare Center, LLC, 426 F.Supp.2d 827, 833 (N.D. Ill. 2006). Plaintiffs contend that Count VII sufficiently establishes that Francisca Martinez, Juan Castillo and Silvina

Marquez (*hereinafter*, collectively the "Non-Complaining Plaintiffs") engaged in protected activity

because Carlos Martinez (*hereinafter* "Carlos") and Armando Celestino (*hereinafter* "Armando")[1]

acted as their "emissaries" when Carlos and Armando allegedly complained about violations of the

FLSA (Complaint, ¶ 67),[2] and the issue of "whether or not the plaintiffs sufficiently communicated

the message that they were acting as agents of the other plaintiffs is a question of fact for the jury."

(Opposition, p. 2).  Additionally, Plaintiffs assert that the Non-Complaining Plaintiffs were subject

to adverse action because "they were compelled to accept compensation that was less that (sic) what

the law mandates."  (Opposition, p. 3).  Both of these arguments entirely contravene applicable law.

Count VI impermissibly requires speculation to state that the Non-Complaining Plaintiffs

engaged in protected activity.  A claim of retaliation is not implicated if an employee never mentions

his or her complaint, because an employer cannot retaliate when it is unaware of complaints.  Bernier

v. Morningstar, Inc. 495 F.3d 369, 376 (7th Cir. 2007).  All that Count VI states is that Carlos and

Armando were emissaries of the Non-Complaining Plaintiffs.  (Complaint, ¶ 67).  Thus, in order for

the conclusion that Defendants retaliated against the Non-Complaining Plaintiffs, an assumption

must be made -- that when Carlos and Armando made their alleged complaint, they advised

Defendants that they were acting on behalf of the Non-Complaining Plaintiffs.  This necessary

inference  renders Count VI inadequate, for Rule 8 of the Federal Rules of Civil Procedure requires

that allegations plausibly suggest that the plaintiff has a right to relief, with that possibility being

---

[1]  In referring to these plaintiffs by their first names, Defendants do not mean to be disrespectful. Defendants have done so because there are two plaintiffs with the surname Martinez.

[2]  As stated in the Motion to Dismiss Counts VI and VII and Claim for Attorneys' Fees in Count III of the Complaint, Defendants recognize for the purpose of this Motion that Carlos and Armando have stated a claim for retaliation under the FLSA.  However, since Carlos and Armando make a separate claim for FLSA retaliation in Count V of the Complaint, for them, Count VI is duplicative.

3

above a speculative level.  Equal Employment Opportunity Commission v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007).  Accordingly, Count VI does not sufficiently plead that the Non-Complaining Plaintiffs engaged in protected activity.

Count VII likewise falls short in its claim that the Non-Complaining Plaintiffs suffered adverse action.  The Complaint alleges that the injury suffered by the Non-Complaining Plaintiffs is that "their efforts to ameliorate the wage and hour violations to which they are subject were silenced."  (Complaint, ¶ 70).  In the Opposition, Plaintiffs claim that this type of injury was materially adverse to the Non-Complaining Plaintiffs because "they were compelled to accept compensation that was less that (sic) what the law mandates."  (Opposition, p. 2, 3).  However Plaintiffs may characterize this claim, the alleged "injury" on which the retaliation claim of Non-Complaining Plaintiffs rests is merely that Defendants' alleged payroll violations continued after the alleged termination of Carlos and Armando and the Non-Complaining Plaintiffs believed that they could not complain about this alleged continuing violation.  As the alleged payroll violations predate the complaint of Carlos and Armando, Defendants obviously did not implement them to retaliate against anybody.  Moreover, even if the Non-Complaining Plaintiffs felt intimidated by Defendants' alleged termination of Carlos and Armando, the mere fact that an employee does not like an employer's act or omission does not elevate that act or omission to the level of a materially adverse action.  Campbell v. HSA Managed Care Systems, Inc., 1997 U.S. Dist. LEXIS 15361, * 28-29 (N.D. Ill, 9/22/97), attached hereto as Exhibit 2.  The Complaint utterly fails to state that the Non-Complaining Plaintiffs suffered any true adverse action, and Count VI should also be dismissed on this basis.

4

II.     **PLAINTIFFS' FAILURE TO COMPLY WITH ANY OF THE REQUIREMENTS OF THE ATTORNEYS' FEES IN WAGE ACTION ACT BARS ANY RELIEF UNDER THAT STATUTE**

Without citing any case law to support their position, Plaintiffs contend that Defendants should be estopped from demanding Plaintiffs' strict compliance with the AFWAA because the alleged termination of Carlos and Armando made Plaintiffs fear that if they requested access to their payroll records, they would be terminated. (Opposition, p. 3). Plaintiffs' argument should be rejected because they did not comply with the AFWAA in any fashion, let alone strictly comply with that law.

In order to recover attorneys fees under the AFWAA, a plaintiff (or his or her attorney) must make a written demand for wages at least three days before filing a lawsuit and the written demand must claim an amount due and owing that is no more than the amount recovered in the lawsuit. 705 ILCS 225/1. The right to recovery requires strict compliance with the provisions of the AFWAA. Anderson v. First American Group of Companies, Inc., 818 N.E.2d 743, 751-752 (1st Dist. 2004). In neither the Complaint nor the Opposition do Plaintiffs ever allege that they made a written demand for wages. Further, Plaintiffs allege in the Complaint that they worked for twice the number of hours recorded in their pay stubs. (See Complaint, ¶ 34). Plaintiffs do not provide any reason why they could not have examined their pay stubs, multiplied the number of hours reflected by two, and thereby computed a number to place in a written demand. Plaintiffs' argument that Defendants are somehow estopped from demanding strict compliance with the AFWAA eliminates the need for plaintiffs to comply with **any** of the prerequisites for recovery under the AFWAA. As there is no basis for the result requested by Plaintiffs, they should be barred from recovering attorneys fees under the AFWAA.

**III.    PLAINTIFFS' ASSERTION THAT THE TORT OF RETALIATORY DISCHARGE SHOULD BE EXTENDED TO THE ILLINOIS MINIMUM WAGE LAW IS BASELESS**

In responding to the Northern District precedents referenced by Defendants in the Motion, Plaintiffs allege that the Northern District has created a "Catch 22" supposedly because those precedents do not consider employees who are not covered by the FLSA and the precedents rely upon the supposedly incorrect assumption that the Illinois Minimum Wage Law (*hereinafter*, the "IMWL"), 820 ILCS 105/1, *et seq.*, is analogous to the Illinois Wage Payment and Collection Act (*hereinafter*, the "IWPCA"), 820 ILCS 115/1, *et seq*. (See Opposition, pp. 4-7). As is demonstrated below, there is no reason why this Court should not follow the decisions in <u>Wilke v. Salamone</u>, 404 F.Supp.2d 1040, 1049-1050; <u>Skelton v. American Intercontinental Univ. Online</u>, 382 F.Supp.2d 1068, 1078 (N.D. Ill. 2005); <u>Cichon v. Exelon Generation Co.</u>, 2002 U.S. Dist. Lexis 21228, * 7, 8 (N.D. Ill., 10/31/02), attached as Exhibit 1 to Motion; and <u>Jarmoc v. Consolidated Elec. Distribs.</u>, 1992 U.S. Dist. Lexis 211511, * 1 (N.D. Ill. 1992), attached hereto as Exhibit 3, and rule that Count VII does not state a cognizable claim.

Plaintiffs' argument that the four Northern District holdings cited above should be disregarded because they "afford a remedy to some employees (those who are covered by the FLSA), leave numerous others remediless (those who are not covered by the FLSA)" (Opposition, p. 4), is a red herring. In the Complaint, Plaintiffs bring a separate count for FLSA retaliation in Count V. Thus, Plaintiffs themselves recognize that they have a remedy under the FLSA and that they do not face any "Catch 22." Moreover, even though Plaintiffs state that the question of whether an employee is covered by the FLSA is only resolved after trial (Opposition, p. 4), this fact does not mean that employees who do not recover overtime or minimum wage payments cannot recover for

retaliation under the FLSA. Instead, the Seventh Circuit has recognized for nearly ten years that there is no requirement that the FLSA actually be violated for a plaintiff to prevail on a retaliation claim -- all that is required is that the plaintiff have a good faith belief that those laws might be violated. Sapperstein v. Hager, 188 F.3d 852, 857 (7th Cir. 1999). Accordingly, the supposed lack of remedy that Plaintiffs assert would be cured by permitting a retaliatory discharge cause of action in fact does not exist. Hence, Plaintiffs' contention that the common law tort of retaliatory discharge should be available to persons who make complaints under the IMWL or the FLSA is meritless.

The only case law that is cited by Plaintiffs to support their argument that an employee who is discharged for complaining about alleged overtime or minimum wage violations is Robbins v. City of Madison, 549 N.E.2d 947, 949 (5th Dist. 1990), which stated in dicta that such a discharge would violate public policy. Since the Robbins decision, no reported Illinois court decision has indicated in any manner that the tort of retaliatory discharge is available to employees who are discharged for complaining about violations of the IMWL, a fact that was recognized in Wilke:

> Despite the dicta in Robbins, Illinois courts have repeatedly limited the reach of the retaliatory discharge claim. The Illinois Supreme Court has only recognized two situations in which it applies: when an employee is discharged for asserting a worker's compensation claim and when he is discharged for whistle-blowing. Illinois appellate courts have recognized the state supreme court's reluctance to expand this tort claim and have consistently refused to apply it beyond these two circumstances.

Wilke, 404 F.Supp.2d at 1049. Given the continual rulings of Illinois courts which have rejected efforts by plaintiffs to plead retaliatory discharge when they are supposedly discharged for complaining about their employer's pay practices, e.g., Chicago Commons Ass'n. v. Hancock, 804 N.E.2d 703 (1st Dist. 2004)(employee discharged for filing appearance in lawsuit brought by

employer to recover alleged overpayment of wages); Geary v. Telular Corp., 793 N.E.2d 128 , 134-135 (1st Dist. 2003) (employee discharged for demanding payment of commission); McGrath v. CCC Information Services, Inc., 731 N.E.2d 384, 391-393 (1st Dist. 2000) (employee discharged over dispute about stock options), this Court should find that the dicta in Robbins does not reflect the current position of Illinois state courts regarding the tort of retaliatory discharge.

Plaintiffs' final contention is that the decisions in Hancock, Geary, McGrath, and similar Illinois state court rulings do not apply in this situation because those cases involve alleged violations of the IWPCA, as opposed to the IMWL. (Opposition, p. 7). Plaintiffs assert that the IWPCA "is concerned with the enforcement of contractual arrangements that are individual in nature" (Opposition, p. 7), while the obligations of employers under the IMWL are public concerns. (Opposition, p. 8). This argument is disingenuous. Plaintiffs themselves recognize the general equivalence of the IWPCA and the IMWL in the Complaint itself, where they plead "the rights and remedies set forth in these statutes (the IMWL, the IWPCA and the AFWAA) are generally similar and analogous to those that Congress set forth in the FLSA." (Complaint, ¶ 2). Moreover, the purpose of the IWPCA is to ensure that employees receive proper compensation for their work, a goal that closely correlates the IMWL's purpose to ensure employees are paid minimum wages and (if not exempt) overtime compensation. See Wilke, 404 F.Supp.2d at 1050. As Plaintiffs' alleged distinction between the IMWL and the IWPCA lacks a factual basis, their contention that Illinois precedent concerning the IWPCA are distinguishable must be rejected. In this case, Count VII of the Complaint does not plead a recognized cause of action, as is recognized in Skelton, Wilke, Cichon and Jarmoc, and it should therefore be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants Bella Flowers & Greenhouse, Inc., Ramon Ortiz and Mario Ortiz respectfully request that this Honorable Court grant their Motion to Dismiss Counts VI and VII and Claim for Attorneys' Fees in Count III of the Complaint, that it dismiss Counts VI and VII and Plaintiffs' claims under the AFWAA with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and that it take such further action as is just and appropriate.

Respectfully submitted,

**BELLA FLOWERS & GREENHOUSE, INC., RAMON ORTIZ, and MARIO ORTIZ**

_____/s/ Seth D. Matus_____
_____One of their Attorneys

Norman T. Finkel
Seth D. Matus
Schoenberg Finkel Newman & Rosenberg, LLC
222 S. Riverside Plaza
Suite 2100
Chicago, Illinois 60606
(312) 648-2300

Case 1:08-cv-01493    Document 26-2    Filed 05/29/2008    Page 1 of 9

Page 1

1997 U.S. Dist. LEXIS 15361, *; 4 Wage & Hour Cas. 2d (BNA) 365

21 of 100 DOCUMENTS

**DEBRA L. CAMPBELL, Individually, and on behalf of a class of employees similarly situated, Plaintiff, vs. HSA MANAGED CARE SYSTEMS, INC., successor to HEALTH SYSTEMS ARCHITECTS, INC., JEANNETTE HOWARD and LAWRENCE MANCINI, Defendants.**

**No. 97 C 1622**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1997 U.S. Dist. LEXIS 15361; 4 Wage & Hour Cas. 2d (BNA) 365*

**September 22, 1997, Decided**
**September 25, 1997, Docketed**

**DISPOSITION:**     [*1]  HSA's motion for summary judgment granted in part and denied in part.

**COUNSEL:** For DEBRA L CAMPBELL, plaintiff: Ernest Thomas Rossiello, Elena M. Dimopoulos, Ernest T. Rossiello & Associates, P.C., Chicago, IL.

For HSA MANAGED CARE SYSTEMS, INC., JEANNETTE HOWARD, LAWRENCE MANCINI, defendants: Stanley L. Goodman, David W. Garland, Dean A. Koplik, Grotta, Glassman & Hoffman, Roseland, NJ.

For HSA MANAGED CARE SYSTEMS, INC., JEANNETTE HOWARD, LAWRENCE MANCINI, defendants: Brian Wegg Bulger, Josh Michael Friedman, Bates, Meckler, Bulger & Tilson, Chicago, IL.

**JUDGES:** Suzanne B. Conlon, United States District Judge.

**OPINION BY:** Suzanne B. Conlon

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Debra L. Campbell ("Campbell") sues her former employer, HSA Managed Health Care Systems, Inc. ("HSA") for violations of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201 et seq.*, the Illinois Minimum Wage Law ("IMWL"), *820 ILCS 105/1 et seq.*, Illinois Wage Payment and Collection Act ("IWPCA"), *820 ILCS 115/1 et seq.*, and for state law retaliatory discharge. [1] HSA moves for summary judgment pursuant to *Fed. R. Civ. P. 56.*

1  In her response to HSA's motion for summary judgement, Campbell volunteers the dismissal of the Illinois state law claims. Pl. Ans. at 1 n.1; Pl. Resp. at 11. This motion for a voluntary dismissal fails to comply with Local Rule 12(B) specifying the proper procedure for presentment of motions. The motion is also untimely. Campbell cannot wait until her response to the motion for summary judgment to withdraw claims and assert claims are still viable so they must be dismissed without prejudice. *Fed. R. Civ. P. 41* only permits voluntary dismissal of a claim without order of the court "**before service by the adverse party of an answer or a motion for summary judgment.**" (emphasis added). In sum, Campbell cannot avoid adverse rulings by withdrawing claims at this juncture.

**[*2] BACKGROUND**

The following facts are undisputed unless otherwise noted. [2] HSA is in the business of developing and providing computer software products for the managed health care industry. HSA's 12(M) stmt. P 1 ("Def. 12(M) P"). HSA's principal place of business is in Bloomingdale, Illinois. Id. Campbell began working as a senior administrative assistant at its Bloomingdale office in October 1996. Def. 12(M) P 7.

2  Campbell's denials that are unsupported by the required citations to the record are deemed admitted. See *Flaherty v. Gas Research Institute, 31 F.3d 451, 455 n.4 (7th Cir. 1994).* Campbell denies the following paragraphs of HSA's 12(M) without reference to any factual support. Pl. 12(N)(3)(b) PP 22-25, 69-70.

EXHIBIT

2

Initially, Campbell worked for HSA as a temporary employee paid by Staffing Consultants, Inc. Def. 12(M) PP 8-9. At the end of November 1996, Campbell accepted full-time employment with HSA in the position of senior administrative assistant. Def. 12(M) P 10. Campbell's rate [*3] of pay as of November 26, 1996, the date she was put on the payroll, was $ 14.42 per hour). Def. 12(M) PP 10-11. Campbell remained at this pay rate until she resigned from HSA to take an administrative assistant job at another company. Def. 12(M) P 12.

Throughout her employment, Campbell reported to Lawrence Mancini, HSA's vice-president of sales and marketing. Def. 12(M) P 13. When Campbell began working for Mancini, she performed secretarial work for him and a few other members of the sales and marketing department. Def. 12(M) P 15. Campbell was the only senior administrative assistant in her department. Def. 12(M) P 22. Her duties included collecting and faxing prospect and status reports, preparing time sheets, and ordering supplies. Def. 12(M) PP 16, 19. From November 1996 to May 1997, the sales and marketing department added a number of sales employees: Donald Martin, a sales executive, Richard Swarmer, a sales support representative, Paul Guertin, a sales executive, and Dee Roseler, an account manager. Def. 12(M) P 17. Some of these employees worked in other locations in the country and Campbell's responsibilities included providing them with administrative [*4] reports. Def. 12(M) P 18. When the off-site sales personnel required information or supplies, Campbell was expected to furnish that support. Def. 12(M) P 20.

During Campbell's tenure, HSA had a written overtime policy in accordance with federal and Illinois law and communicated that policy to its employees. Def. 12(M) P 25. In a September 24, 1996 memo, HSA explained that a non-exempt employee would be paid for the hours she worked in excess of 40 hours per week at 1-1/2 times the hourly rate. Def. 12(M) P 26. In a memorandum to senior management dated February 26, 1997, HSA reiterated its overtime compensation policy. Def. 12(M) P 27. Further, the HSA benefits handbook stated that non-exempt employees could not "bank time" for early dismissal on Friday; rather these employees would be paid at the overtime wage rate. Def. 12(M) P 28. Campbell received copies of all these memoranda and the HSA handbook. Def. 12(M) PP 25-28.

In late January, Campbell attempted to submit a time sheet with overtime. Deposition of Debra Campbell ("Campbell Dep. at    ") at 125, 140. Mancini had not signed her time sheet yet, and asked her to take the overtime off the sheet. Campbell Dep at. 125-126, [*5] 140-141. Campbell spoke to Joan Wiscons, secretary to HSA's President, Jeannette Howard, about whether she

should be paid overtime. Def. 12(M) P 32. Wiscons told Campbell it was Howard's policy to pay for overtime. Id.; Campbell Dep. at 126. About February 11, 1997, Campbell approached Mancini about the overtime issue. Campbell's 12(N) Counter-Stmt. P 2 ("Pl. 12(N)(3)(b) P "). She went into his office and he closed the door. Id. Mancini told Campbell he did not want to pay her overtime. Def. 12(M) P 29. According to Campbell, he came up with a "private agreement" and suggested she receive "comp time for the time that would ordinarily be overtime." Pl. 12(N)(3)(b) P 3; Campbell Dep. at 142. [3] At her deposition, Campbell claimed she was "never in agreement with the comp time arrangement" and that she told Mancini it was "not acceptable" to her. Pl. 12(N)(3)(b) P 5; Def. 12(M) Reply P 5; Campbell Dep. at 146-147. Further, she told Mancini it was illegal not pay her overtime and that she does not "work for free." Pl. 12(N)(3)(b) P 6; Def. 12(M) Reply P 6. She did, however, do some comp time in February "to get along." Pl. 12(N)(3)(b) P 7; Def. 12(M) Reply P 7.

> 3    The last sentence of the third paragraph of Campbell's 12(N)(3)(b) statement states, "the 'comp time' idea, Mancini said, was for 'cost reasons.'" This brutally misstates the deposition testimony by quoting it out of context. On page 148 of the deposition, Campbell was explaining an overtime payment issue that arose when she worked at Motorola. HSA's 12(M) Response P 3 ("Def. 12(M) Reply P").

[*6]    For the months of January and February, Campbell's comp time reports indicated she worked a total of 15.75 hours overtime between January 20 and February 13. Def. 12(M) P 33. Sometime toward the end of February, Campbell grew dissatisfied with the comp time arrangement. Def. 12(M) P 34. According to her deposition, "it was getting to be a real pain in the neck" to schedule comp time because Mancini did not find her requested times acceptable. Pl. 12(N)(3)(b) P 10; Campbell Dep. at 149-150. Mancini had Campbell work overtime, but then was not paying her or giving her comp time. Pl. 12(N)(3)(b) P 12. Campbell stated: "Let's just keep it above board and on the level here and just pay me my time then. If you want me to stay and work, then I need to be paid." Pl. 12(N)(3)(b) P 11; Campbell Dep. at 150.

She spoke to Laura Martin in HSA's accounting office about not having been paid her overtime. Def. 12(M) P 34; Pl. 12(N)(3)(b) PP 13-14. Martin was in agreement with Campbell that it was illegal not to pay overtime to employees. Pl. 12(N)(3)(b) P 16; Def. 12(M) Reply P 16. Martin told her that she should be recording her overtime hours on her time sheet so she would be paid for them. Def. [*7] 12(M) P 35. Martin also told Campbell that

she would speak to Antoinette Woolsey, HSA's manager of human resources, about the situation. Def. 12(M) P 36.

Almost immediately after Martin advised her of Campbell's concern, Woolsey spoke to Campbell about not having been paid for overtime. Def. 12(M) P 37. Woolsey arranged a meeting with Campbell and Mancini on March 3 "to clear the air." Def. 12(M) P 38; Pl. 12(N)(3)(b) P 23. At the meeting, Woolsey told Campbell that HSA would pay her for the hours she had previously worked in excess of 40 hours per week. Def. 12(M) P 39. Woolsey also told Campbell that she would be paid for any overtime that she worked in the future and to record her overtime on her weekly timesheet. Def. 12(M) P 40. To ensure that HSA paid Campbell the correct amount for the work she had already performed, Woolsey gave Campbell a time correction sheet and asked Campbell to return it to her. Def. 12(M) P 41.

Although Campbell told Woolsey she would provide her with the requested information, she never returned the time sheet to Woolsey. Def. 12(M) P 42. Further, even though Woolsey instructed Campbell at the March 3 meeting to record her overtime on her weekly timesheet, [*8] Campbell sent Mancini another comp time memo dated March 7, 1997. Def. 12(M) PP 40, 43. The memo indicated .25 hours of overtime on February 27 and .5 hours on March 4. Def. 12(M) P 44. Upon receipt of the comp time memo on March 10, Mancini wrote a note on it to Campbell that stated "this issue was resolved during our March 3 meeting with Toni -- you will be paid O.T. as we discussed." Def. 12(M) P 45. [4] Mancini also advised Campbell on the March 7 comp memo that "Toni [Woolsey] is still waiting for your time sheet change authorizing previous O.T. pay per our discussion that same day." Def. 12(M) PP 35, 46. Campbell responded with a note of her own to Mancini on the face of the March 7 memo, stating "this issue has not been resolved in any meeting. Please direct questions to attorney." Def. 12(M) P 47.

> 4 Campbell's hearsay objection in response to this statement is unfounded because she admits to the contents of Mancini's handwritten note in her deposition. Campbell Dep. at 327-328.

Campbell had not [*9] previously mentioned the retention of an attorney. Def. 12(M) P 48. In fact, on March 6 she asked for and received Mancini's approval to leave early on Friday, March 7 for a purported doctor's appointment. Id. Instead of seeing a doctor on March 7, she went to see her attorneys. Def. 12(M) P 49. This lawsuit was filed the following Monday, March 10, 1997. Id.

Woolsey still had not received the time correction sheet from Campbell when she tendered a check on

March 13 in the amount of $ 275.29. Def. 12(M) P 50. The amount of the check was the net amount that Woolsey had determined was owing to Campbell for 13.5 hours overtime and 1.5 hours straight time. Def. 12(M) P 51. Campbell refused to accept the check tendered by Woolsey because she thought that would waive her rights. Def. 12(M) P 52; Pl. 12(N)(3)(b) P 29. She also did not sign the check because it should have included compensation for another .75 hours. Pl. 12(N)(3)(b) P 30; Def. 12(M) Reply P 30. On March 18, Woolsey received another comp time memo from Campbell which indicated that Campbell had earned another .5 hours comp time. Def. 12(M) P 53. Woolsey made arrangements so that Campbell was paid the overtime in her [*10] check for the pay period ending March 29, 1997. Id. In this lawsuit, Campbell claims that HSA owed her the gross amount of $ 315.00 in overtime -- only $ 1.36 more than the gross amount calculated by Woolsey. Def. 12(M) P 54.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under *Rule 56* when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c)*; *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*; *Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993)*. Once a moving party has met her burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. *Fed.R.Civ.P. 56(e)*; *Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990)*. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992)*.

A genuine issue of material fact [*11] exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*; *Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993)*, cert. denied, *510 U.S. 1121, 127 L. Ed. 2d 393, 114 S. Ct. 1075 (1994)*. This standard is applied with added rigor in employment discrimination cases, where issues of intent and credibility often dominate. *Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993)* (citations omitted). Although this language could be misconstrued to require heightened review in employment cases, the Seventh Circuit has stressed that "there is no separate rule of civil procedure in employment discrimination cases," rather the "added rigor" language only means "courts should be careful in a dis-

crimination case as in any case not to grant summary judgment if there is an issue of material fact that is genuinely contestable, which an issue of intent often though not always will be." *Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1396 (7th Cir. 1997)*. Employment discrimination case or not, the nonmoving party "must do more than [*12] simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson, 477 U.S. at 252*.

## II. EQUITABLE ESTOPPEL

HSA invokes the doctrine of equitable estoppel to bar Campbell's statutory claims under the FLSA and the IMWL. [5] HSA asserts the following undisputed facts are sufficient to warrant application of the doctrine. Upon discovering the overtime problem, Campbell told Woolsey she would supply a time correction sheet so that HSA accounting could use the information to pay her for the overtime they owed her. Campbell never supplied HSA with the time correction sheet, instead she filed this lawsuit on March 10, 1997. In the meantime, Woolsey used the available information documenting the overtime hours owed Campbell to produce a check for the net amount of $ 275.29. HSA tendered the check to Campbell on March 13, but she [*13] refused the check despite the fact the gross amount was only $ 1.36 less than the $ 315 dollars in overtime she claims is actually owed to her.

> 5    HSA's additional argument that the claims should be dismissed because the amount in controversy is *de minimis* is meritless. True, there was a $ 1.36 difference between the gross amount of the check tendered to Campbell and the gross amount of employment compensation she contends HSA owes her -- $ 315. However, Campbell refused to accept the check. The amount in controversy is $ 315 plus whatever liquidated or other damages Campbell is entitled to under the statutes. In light of the public policies at stake in ensuring proper overtime compensation, the amount is not *de minimis*. See *Mitchell v. Robert DeMario Jewelry Co., 361 U.S. 288, 292, 4 L. Ed. 2d 323, 80 S. Ct. 332*, (1960).

"'Equitable estoppel is a judicially-devised doctrine which precludes a party to a lawsuit, because of some improper conduct on the party's part, from asserting a claim or defense, [*14] regardless of its substantive validity." Long v. Trans World Airlines, (N.D. Ill. 1991) (quoting *Phelps v. Fed'l Emergency Management Agency, 785 F.2d 13, 16 (1st Cir. 1986))*. HSA cites cases invoking the equitable estoppel doctrine to dismiss the FLSA claims. [6] None of the cases apply the doctrine in circumstances remotely similar to those in this case. In both *Forrester v. Roth's I.G.A. Foodliner, 475 F. Supp. 630 (W.D. Va. 1979), aff'd 646 F.2d 413 (9th Cir. 1981)* and *Brumbelow v. Quality Mills, Inc., 462 F.2d 1324, 1327 (5th Cir. 1972)*, the employee was equitably estopped from asserting a FLSA claim because of deliberate omission or intentional falsification of time records. In Forrester, the Ninth Circuit affirmed the district court's grant of summary judgment in favor of the employer because the evidence raised no genuine issue of material fact as to the employer's knowledge that the employee "had been uncompensated for overtime work he had performed." *646 F.2d at 414*. Aside from simply failing to inform his employer of the uncompensated overtime, the evidence demonstrated that the employee "deliberately omitted" overtime from his timesheet even though [*15] he admitted he would have been paid for the overtime. Id. The holding was limited to the circumstance where an employee by his acts of concealment prevents an employer from acquiring the knowledge necessary to establish a violation of *section 207(a)* of the FLSA. *Id. at 414-415*. Similarly, in Brumbelow the Fifth Circuit affirmed a directed verdict for the employer on equitable estoppel grounds because there was no evidence the employer "encouraged workers to falsely report" their hours or "that it knew or should have known [the employee] .... was giving false information to conceal the fact" she was not meeting production standards in order to retain her job. *462 F.2d at 1327*.

> 6    HSA cites no case law supporting the application of equitable estoppel in the context of the IMWL.

HSA's attempt to analogize Paddy v. Smith, 70 Lab. L. Rep. (CCH) P 32, 836 (W.D. La. January 19, 1973), to this case fails. In Paddy the employee was estopped from claiming unpaid overtime because of his "deliberate [*16] and conscious refusal to cooperate with his employer in the record keeping function." Id. at 45, 773. The evidence demonstrated the employee's awareness of the requirement he keep accurate time records and his deliberate refusal to punch time cards despite the requests of his supervisors. Id. at 45, 774. There is no similar evidence in this case. Rather, it may be inferred that Mancini was responsible for Campbell's failure to keep accurate time records. The evidence shows he declined to sign her overtime timesheet on one occasion at the end of January 1997. Similar evidence of employer conduct has caused courts to decline to impose equitable estoppel on an employee. See e.g., Abel v. Dep't of Corrections of

the State of Kansas, 1995 WL 550045, *4 (D. Kan. July 26, 1995) (denying summary judgment where plaintiffs "submitted testimony to prove that some of their supervisors discouraged them from reporting uncompensated overtime."); *McConnell v. Thomson Newspapers, Inc., 802 F. Supp. 1484, 1506 (E.D. Tex. 1992)* (refusing to apply equitable estoppel where employee testified in his deposition that "managerial employees ... told him not to keep records of his overtime.").

[*17]  The cases cited by HSA do not permit the conclusion that an employee should be equitably estopped from advancing an FLSA claim for unpaid overtime by her failure to cooperate with an employer's efforts to redress a statutory violation. Unlike those cases, here the reason for the FLSA violation was not the employee's conduct, rather it was the conduct of the employer. The undisputed fact is that Mancini discouraged Campbell from filling out overtime reports. HSA's stated policy was to pay overtime according to the FLSA. HSA cannot use this policy as a shield. See *McDonnell, 802 F. Supp. at 1506* ("If a written policy [requiring reporting of all overtime hours] is, in practice, a mere 'piece of paper', it is of little consequence."). Mancini should be presumed to have knowledge of the stated policies given a memorandum reciting the policy was directed to supervisory employees. Def. 12(M) P 27. Campbell in fact, informed Mancini that his comp time arrangement was illegal. Pl. 12(N)(3)(b) P 7. "Having authorized [Mancini] ... to resolve overtime issues, [HSA] must be charged with the supervisor's knowledge. This also means [HSA] may not assert equitable estoppel alleging it [*18]  knew only what its personnel department may have known." Abel, 1995 WL at * 4.

In light of Mancini's knowledge, HSA had ample opportunity to comply with the FLSA requirements. Duncan v. Brockway Standard, Inc., [1 Wage Wages-Hours] Lab. Rel. Rep. 2d (BNA) 485, 1992 WL 510256, * 4 (N.D. Ga. Sept. 21, 1992) (employee's failure to affirmatively report overtime did not deprive employer of opportunity to comply with FLSA because there was genuine issue of material fact as to whether the employer knew about the employee's overtime hours). *Section 207(a)* requires employers to pay non-exempt employees at a rate of 1-1/2 times the regular rate for all overtime hours. *29 U.S.C. § 207(a).* HSA knew about this requirement and is charged with Mancini's knowledge that Campbell was not being paid overtime compensation. "An employer who knows or should have known that an employee is or was working overtime must comply with the provisions of *[section] 207.*" Forrester, 646 F.2d at 414. Further, an employer possessing such knowledge is not excused from compliance with *section 207* even where "the employee does not make a claim for overtime compensation." Id.; see also Duncan, 1992 [*19]  WL *

4 (employer's knowledge precluded summary judgment on equitable estoppel defense despite plaintiff's failure to affirmatively report hours). Campbell's failure to produce the requested overtime correction sheet is akin to failing to make a claim for overtime compensation or to failing to affirmatively report. Because of HSA's knowledge, Campbell's actions cannot be used as grounds for HSA to avoid liability. This lawsuit could have been avoided had Campbell reasonably cooperated in HSA's attempt to redress violations of the overtime provisions of the FLSA. However, Campbell's claims under the FLSA and the IMWL are not barred by the doctrine of equitable estoppel.

## III. FLSA RETALIATION

HSA contends Campbell fails to establish a prima facie case of retaliation under *section 215(a)(3)* of the FLSA. *Section 215(a)(3)* makes it unlawful for any person to "discharge or in any other manner to discriminate against any employee because such employee has filed any complaint or caused to be instituted any proceeding under or related to this chapter . . . ." *29 U.S.C. § 215(a)(3).* To establish a prima facie case of retaliation under the FLSA, Campbell must show that (1) she engaged [*20]  in a statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the protected expression and the adverse action. *Larsen v. Club Corp. of America, 855 F. Supp. 247, 253 (N.D. Ill. 1994).* There is no dispute as to whether Campbell can establish the first element of a prima facie case of retaliation. She engaged in protected activity by complaining to management about the overtime issue. *Wittenberg v. Wheels, Inc., 963 F. Supp. 654, 658 (N.D. Ill. 1997).* Indeed, HSA only argues Campbell cannot prove she suffered a materially adverse action or the requisite causal link between HSA's actions and her complaints about the overtime issue.

To prove a materially adverse action by HSA Campbell need not show an actual discharge. She must show:

> [A] material adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished [*21]  material responsibilities, or other indices that might be unique to a particular situation.

*Crady v. Liberty National Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993) (interpreting similar language in the Age Discrimination in Employment Act); see also *Blackie v. State of Maine*, 75 F.3d 716, 725 (1st Cir. 1996) (applying the Crady definition in the FLSA retaliation context). [7]

> 7    Although the Seventh Circuit has yet to apply the Crady definition of a materially adverse action in the FLSA retaliation context, there is no reason to believe the court would not do so. See, e.g., *Jackson v. City of Fort Wayne*, 91 F.3d 922, 932 (7th Cir. 1996) (applying Crady in race discrimination case); *Rabinowitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996) (applying Crady in age and religious discrimination case).

Campbell claims her attempts to resolve the overtime compensation issue resulted in various forms of retaliation at the hands of her supervisor and other sales and marketing employees [*22] and that these reprisals ultimately led to her resignation. Pl. 12(N)(3)(b) P 31. Campbell recounts a phone conversation she had with Mancini that escalated into an argument. Pl. 12(N)(3)(b) P 19. In this conversation, Campbell broached the overtime issue again. Campbell Dep. 174. [8] Campbell recalls two portions of the conversation that particularly upset her. First, Mancini asked her a "whole round" of "what if" questions. Campbell Dep. at 174-175. After this battery of questions, Campbell testified: "And I, I guess, kind of made him explain further, because I said, well, I don't understand what you're saying, you know. And then he made a comment about it going over my head." Campbell Dep. at 175. [9] Second, Campbell testifies Mancini made a comment "about my being a single parent." Campbell Dep. at 177. Mancini told Campbell being a single parent "must be very tough" and "very hard," and she responded "it is hard and I don't need it being made harder, you know." Campbell Dep. at 178. The statement bothered Campbell because she "didn't think it was any of [Mancini's] business." Id. After the argument with Mancini, Campbell went to Woolsey to tell her about what was said. Campbell [*23] Dep. at 180. She told Woolsey "it seemed like a control thing or something . . . . [and] was very strange, you know, about the time and the single parent stuff and then just going over my head." Id.

> 8    The manner in which Campbell pulls phrases out of the deposition context and juxtaposes them with qualifiers in her 12(N)(3)(b) statement grossly mischaracterizes the nature of the deposition testimony. For instance, in paragraph 20 Campbell states "He [Mancini] accused plaintiff of lying about her hours." Cambell's deposition

testimony clearly belies this blunt statement. Def. 12(M) Reply P 20. Campbell only states that various questions posed by Mancini prompted the subjective feeling and belief "he was accusing me of lying about my time" Campbell Dep. at 176-177. Similarly, paragraph 21 states Mancini's comment about her being a single parent "bothered plaintiff quite a bit." On the deposition page cited, Campbell merely asserts the comment "kind of bothered me." There are other examples, too numerous to warrant mentioning, of Campbell's misleading citation to her deposition. These statements therefore are unreliable as a basis from which to glean the undisputed facts relevant to Campbell's retaliation claims. Therefore, the court relies on deposition testimony and on HSA's 12(M) statement and 12(M) reply in reciting these facts.

[*24]

> 9    Campbell's transformation of this particular portion of deposition text approaches the sort of misleading conduct that would warrant imposition of sanctions. Campbell's statement distorts the plain meaning of this text, stating "He [Mancini] accused plaintiff of 'going over (his) head.'" Clearly, Campbell offers this fact for the adverse inference Mancini was accusing Campbell of complaining to his superiors about the overtime issue. However, read in context the chosen language only permits the plain inference that Mancini told Campbell his questions were going over her head; in other words that she did not understand his line of questioning.

After the March 3 meeting, she claims Mancini engaged in a sequence of actions connected to the timesheet issue. Campbell Dep. at 194-195. Mancini rudely entered Debbie McNamara's cubicle and interrupted Campbell's conversation with her. Campbell Dep. at 193-194. Mancini and McNamara had a "screaming, swearing argument" about promotional materials -- an argument that did not involve Campbell. Def. 12(M) Reply P 25; Campbell Dep. at 194. The next day, [*25] Mancini interrupted another conversation with Campbell and McNamara "very rudely" and without saying "excuse me." Campbell Dep. at 195. Another time, when Campbell was eating her lunch, Mancini "kept coming out and bothering" her, then followed her to another cubicle and told her he was going to lunch. Def. 12(M) Reply P 25; Campbell Dep. at 193. Woolsey spoke to Campbell about this incident, and informed her that her reaction to Mancini was insubordination. Campbell Dep. at 195-196. Campbell felt Woolsey immediately sided with Mancini. Campbell Dep. at 196. Yet another incident with Mancini concerned a meeting with Woolsey that Campbell did not attend. Id. Campbell was late arriving at the

meeting because she was helping a fellow employee with a computer program. Campbell Dep. at 197. Campbell contends she was excluded from the meeting because of the overtime issue. Pl. 12(N)(3)(b) PP 25-26.

Another set of incidents regarded Campbell's day to day job duties in the sales and marketing department. On March 11, 1997, Mancini asked Campbell to stay late for half an hour to work on a monthly report. Def. 12(M) Reply P 31(e). Campbell was paid for that overtime work. Id. on another [*26] occasion, Mancini told Campbell she was not doing her work and was not supporting her fellow employees. Pl. 12(N)(3)(b) P 31(i). The problem was that Mancini did not receive a fax she sent to him and she had to resend the fax. Def. 12(M) Reply P 31(i); Campbell Dep. at 407. Mancini told Campbell she had to support the sales personnel in her group because they worked off-site. Def. 12(M) Reply P 31(i). As HSA points out, this duty had always been one of her job responsibilities. Id.; Campbell Dep. at 96-97, 98-99.

Campbell's litany of workplace incidents extends beyond acts attributed to Mancini. She asserts she was "set up" and "getting tired of the games people played." Pl. 12(N)(3)(b) P 31(b). She was accused of taking a book out of [the] company library. Def. 12(M) Reply P 11; Campbell Dep. at 223. On two occasions, Paul Guertin allegedly changed the time on a fax machine and then said Campbell would not do his work. Campbell Dep. at 227. One instance involved a fax a fellow employee informed her was an emergency, but when Campbell called Paul he said he just needed her to fax some copies. Id. The second instance involved a time Campbell was going to be leaving work early. [*27] Id. Paul called shortly before she was scheduled to leave and the fax took ten minutes to arrive. Campbell Dep. at 228. When she received the fax "the time had been changed on the top." Id. One evening Paul asked Campbell to stay 15 minutes later to help him complete a weekly report that was not due until the next day. Campbell Dep. at 229. Another time Paul massaged Campbell's shoulders. Pl. 12(N)(3)(b) P 31(h); Def. 12(M) P 60.

Campbell also complains there was a "change in the atmosphere" since she complained about the overtime issue. Pl. 12(N)(3)(b) P 31(c). She claims she was asked to do things other administrative assistants were not asked to do. Pl. 12(N)(3)(b) P 31(k). She mentions few things in her deposition which differentiate her responsibilities from those of other administrative assistants. She testifies other administrative assistants were not required to fill out time correction sheets. Def. 12(M) Reply P 31(k). As HSA points out, there is nothing in the record to indicate other assistants had errors in their overtime compensation. Id. In fact, Campbell testified other administrative assistants had been paid overtime. Id. She

also points out no other [*28] administrative assistants were asked to record when they arrived and left each day. Id. However, Campbell was the only administrative assistant in her department, and since the sales personnel she supported traveled outside the office, Mancini requested she keep a record of when she was in the office. Id.

These incidents occurring after her initial complaints about the overtime issue and in the week or so following the March 3 meeting, viewed either separately or in their totality, do not rise to the level of a materially adverse employment action. The actions Campbell complains about involved no adverse impact on her wages, benefit levels, job title or her responsibilities and privileges. The fact she subjectively felt she was being "set up," "games were being played," or that she found certain employer actions "rude" or "upsetting" does not transform the events -- all of which may happen in the everyday workplace in one's interactions with supervisors -- into reprisals that constitute materially adverse actions. The case-by-case inquiry required to determine whether an action is materially adverse "must be cast in objective terms." *Blackie, 75 F.3d at 725.* "Work [*29] places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse action." Id. Indeed, if every minor change in working conditions or trivial action were a materially adverse action then any "action that an irritable, chip-on-the shoulder employee did not like would form the basis of a discrimination suit." *Williams v. Bristol Meyers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996).*

In the only section of her response brief addressing this critical element of a prima facie case, Campbell devotes all her attention to *Soto v. Adams Elevator Equipment Co., 941 F.2d 543 (7th Cir. 1991).* In Soto, a wage discrimination and retaliation suit under the Equal Pay Act, the court reversed a directed verdict in favor of the employer because there was sufficient evidence of retaliation to support the jury's contrary verdict. *Id. at 551-552.* There was evidence the plaintiff had been surreptitiously demoted on account of her discrimination lawsuit and that her employer was trying to "freeze her out of the firm." *Id. at 552.* In addition to the fact that [*30] the Soto plaintiff suffered a materially adverse action as defined by Crady, a demotion, the uncontroverted evidence indicated she suffered severe emotional trauma as a result of her employer's actions. *Crady, 993 F.2d at 136.* She suffered sleeplessness, significant weight loss and cried every night on the way home from work. *Soto, 941 F.2d at 547, 553.* Campbell has submitted no evidence supporting an inference she suffered similar emotional repercussions as a result of HSA's actions after her complaint. Campbell complains only that certain actions of

her employer's were rude, bothered her, embarrassed her or seemed intrusive.

The undisputed evidence submitted by HSA clearly indicates the absence of a materially adverse action. Campbell herself admitted all of these statements in her response to HSA's statement of uncontested facts, and thus ensured her failure to establish a prima facie case of retaliation. While employed at HSA, Campbell's rate of pay and benefits never changed, her job title remained the same, she was never demoted and her responsibilities remained unchanged. Def. 12(M) PP 55-57, 24. As for the alleged incidents of harassment, Campbell's deposition [*31] testimony is undermined by other 12(M) facts she admitted in her response. Mancini, the alleged perpetrator of many of the purported acts of retaliation, accommodated Campbell's schedule throughout her employment. Def. 12(M) P 63. Despite his assertedly intrusive comment about the difficulty of being a single parent, when Campbell needed to change her schedule because of child care arrangements, he always approved her request. Id. Mancini even told Campbell at their March 3 meeting that if she ever had a problem, that she should speak to him about it. Def. 12(M) P 66.

As for Campbell's complaints about her job interactions with Mancini and Guertin after raising the overtime issue, the evidence fails to support favorable inferences for Campbell. For instance, Mancini provides legitimate business motives for claiming he did not receive a fax or informing her she needed to support the sales personnel. Def. 12(M) PP 67-68. With regard to the adverse actions attributed to Guertin, he attests he was unaware Campbell had objected to not being paid overtime or that she had filed this lawsuit. Def. 12(M) P 70. In fact, Campbell testified she was uncertain whether anyone beyond Woolsey [*32] and Mancini knew of her complaints or the lawsuit. Def. 12(M) Reply P 31(e). Thus, the undisputed evidence establishes Campbell's failure to establish an essential element of a prima facie case of retaliation under *section 215(a)(3)* of the FLSA. For this reason, the court need not address HSA's additional argument that Campbell also fails to establish the requisite causal connection.

## IV. CONSTRUCTIVE DISCHARGE UNDER THE FLSA

Campbell also asserts "there is surely enough evidence whereby a jury could reasonably find that plaintiff, a single parent with no job to go to at the time, was forced to resign because of the pressure on her after she complained about not getting overtime." Pl. Mem. at 10. Campbell cites no case law in support of this theory of retaliation under the FLSA. There appears to be no authority in this circuit discussing the grounds for a finding of constructive discharge in the FLSA context. The Ninth

Circuit encountered a similar absence of authority in *Ford v. Alfaro, 785 F.2d 835 (9th Cir. 1991)*. The Ninth Circuit turned to a Title VII race discrimination case to find the applicable standards for constructive discharge. *Id. at 841*. This court [*33] similarly turns to Title VII case law to find the applicable standards for determining constructive discharge.

Campbell must show her working conditions were so intolerable a reasonable person would have been compelled to resign. *Chambers v. American Trans Air, Inc., 17 F.3d 998, 1005 (7th Cir. 1994)*. Adverse employment actions -- like failure to promote or demotion -- must be accompanied by an aggravating circumstance in order to form the basis for a constructive discharge claim. *Piech v. Arthur Andersen & Co., 841 F. Supp. 825, 832-33 (N.D.Ill.1994); EEOC v. Miller Brewing Co., 650 F. Supp. 739 (E.D.Wis.1986)*. The discrimination must be "beyond the fact of ordinary discrimination on the job." *Gibson v. American Library Ass'n, 846 F. Supp. 1330, 1340 (N.D. Ill. 1993)* (quoting *Taylor v. Western and Southern Life Ins. Co., 996 F.2d 1188, 1194 (7th Cir. 1992)*.

The undisputed evidence fails to establish Campbell's working conditions were so intolerable she was forced to resign. The evidence only proves Campbell was asked to perform duties she was always called upon to perform -- she was asked to send faxes, stay fifteen minutes late to complete a report, and to support [*34] the sales and marketing department. While the office environment may have been tense in the days following her complaints about not being paid overtime, the objective evidence does not show the conditions were intolerable. Campbell makes only vague allegations of "set ups" and other wrongdoing. "An employee may not be unreasonably sensitive to [her] working environment." *Phaup v. Pepsi-Cola General Bottlers, Inc., 761 F. Supp. 555, 570-71 (N.D. Ill. 1991)*. None of this evidence suggests the inference, directly or indirectly, of a retaliatory motive. Accordingly, HSA is entitled to summary judgment on a constructive discharge theory of retaliation.

## V. STATE LAW RETALIATORY DISCHARGE CLAIM

Campbell cannot produce evidence necessary to establish a state law retaliatory discharge claim. Campbell must show: she was (1) discharged; (2) in retaliation for his activities; and (3) that the discharge violated a clear mandate of public policy. *Hartlein v. Illinois Power Co., 151 Ill.2d 142, 160, 176 Ill.Dec. 22, 601 N.E.2d 720 (1992)*. Campbell was not discharged, rather she quit the job for various reasons, among them HSA's "poor business ethics." Pl. 12(N)(3)(b) P 31(a). [*35] Campbell is left with no alternative remedy under Illinois law for the alleged acts of harassment leading to her resignation be-

cause Illinois does not recognize a cause of action for retaliatory harassment. See, e.g., *U.S. v. Northrop Corp., 149 F.R.D. 142, 146 (N.D. Ill. 1993)*; *Veit v. Village of Round Park, 167 Ill. App. 3d 350, 521 N.E.2d 145, 147, 118 Ill. Dec. 77 (2d Dist. 1988)*; Taylor v. South Suburban Hosp., 1990 WL 139249, * 3 (N.D. Ill. 1990). Accordingly, summary judgment is warranted on Campbell's state law retaliatory discharge claim.

## CONCLUSION

HSA's motion for summary judgment is granted in part and denied in part. The motion for summary judgment is granted as to Campbell's retaliation claim under *§ 215(a)(3)* of the FLSA, her claim of retaliation leading to a constructive discharge in violation of the FLSA, and her state law claims of retaliatory discharge and retaliatory harassment in violation of Illinois public policy. Summary judgment is denied as to all remaining claims.

ENTER:

Suzanne B. Conlon

United States District Judge

September 22, 1997

Case 1:08-cv-01493   Document 26-3   Filed 05/29/2008   Page 1 of 3   Page 1

1992 U.S. Dist. LEXIS 12717, *; 123 Lab. Cas. (CCH) P35,701

LEXSEE 1992 US DIST LEXIS 12717

**BARBARA L. JARMOC, Plaintiff, v. CONSOLIDATED ELECTRICAL
DISTRIBUTORS, INC., d/b/a EFENGEE ELECTRIC SUPPLY COMPANY, De-
fendant.**

**92 C 3697**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*1992 U.S. Dist. LEXIS 12717; 123 Lab. Cas. (CCH) P35,701*

**August 25, 1992, Decided
August 26, 1992, Docketed**

**DISPOSITION:**   [*1] Defendant's motion to dismiss
Count I of the complaint is granted.

**JUDGES:** Kocoras

**OPINION BY:** CHARLES P. KOCORAS

**OPINION**

*MEMORANDUM OPINION*

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on defendant's
motion to dismiss Count I of the complaint pursuant to
*Rule 12(b)(6) Fed. R. Civ. P.* for failure to state a claim
upon which relief may be granted. For the reasons set
forth below, the motion is granted, and Count I is dis-
missed.

**BACKGROUND**

Plaintiff Barbara Jarmoc ("Jarmoc") filed this three-
count complaint alleging that she was wrongfully dis-
charged from her position as a secretary and clerical
worker for defendant Consolidated Electrical Distribu-
tors, Inc. ("Consolidated") after she complained to de-
fendant about nonpayment for the overtime hours she
had worked.

Jarmoc alleges that because she was a "non-exempt"
employee, Consolidated was obligated to pay her time
and one-half for any hours worked in excess of 40 during
any work week. Jarmoc claims that during the summer of
1990, she was regularly required to work more than 40
hours per week, for which she did not receive overtime
pay. Jarmoc alleges that she was terminated on Novem-
ber 26, 1991 as the result of her complaints [*2] about
the lack of overtime pay.

In her complaint, Jarmoc states claims for retaliatory
discharge (Count 1), violation of the Fair Labor Stan-
dards Act of 1938 ("FLSA"), as amended, *29 U.S.C. §
201 et seq.* (Count II), and violation of the Illinois Mini-
mum Wage Law, as amended, Ill.Rev.Stat. ch. 48, P
1001 *et seq.* (Count III). Consolidated now moves to
dismiss Jarmoc's claim for retaliatory discharge ("Count
I") for failure to state a claim upon which relief may be
granted. Consolidated argues Jarmoc is precluded from
recovery under the tort of retaliatory discharge because
the FLSA provides a statutory remedy which is sufficient
to vindicate the public policy which Consolidated alleg-
edly contravened.

**DISCUSSION**

Consolidated argues that the claim for retaliatory
discharge must be dismissed because an adequate statu-
tory remedy is already available under the FLSA. [1] The
tort of retaliatory discharge was first recognized in Illi-
nois in *Kelsay v. Motorola, Inc., 74 Ill.2d 172, 23 Ill.
Dec. 559, 384 N.E.2d 353 (1978)*, where an employee
was discharged in retaliation for filing a worker's com-
pensation claim against her employer. In [*3] recogniz-
ing the tort, the Illinois Supreme Court sought to pro-
mote the goal of providing an otherwise remediless em-
ployee with an effective remedy against an employer
who had discharged him or her in contravention of the
state's public policy. *Driveaway & Truckaway Service,
Inc., v. Aaron Driveaway & Truckaway Co., 781 F.
Supp. 548, 552 (N.D. Ill. 1991)*. The *Kelsay* court sup-
ported punitive damages as "a warning and example to
deter defendant and others from committing like offenses
in [the] future." *Kelsay, 384 N.E.2d at 354*. Yet courts
have expressed concern about expanding the scope of the
tort. *See e.g. Fellhauer v. Geneva, 142 Ill.2d 495, 154
Ill.Dec. 649, 654, 568 N.E.2d 870, 875 (1991)*(stating
that the tort of retaliatory discharge is a "limited and nar-
row cause of action tort of retaliatory discharge was first

recognized in Illinois in *Kelsay v. Motorola, Inc., 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978)*, where an employee was discharged in retaliation for filing a worker's compensation claim against her employer. [*4] In recognizing the tort, the Illinois Supreme Court sought to promote the goal of providing an otherwise remediless employee with an effective remedy against an employer who had discharged him or her in contravention of the state's public policy. *Driveaway & Truckaway Service, Inc., v. Aaron Driveaway & Truckaway Co., 781 F. Supp. 548, 552 (N.D. Ill. 1991)*. The *Kelsay* court supported punitive damages as "a warning and example to deter defendant and others from committing like offenses in [the] future." *Kelsay, 384 N.E.2d at 354*. Yet courts have expressed concern about expanding the scope of the tort. *See e.g. Fellhauer v. Geneva, 142 Ill.2d 495, 154 Ill.Dec. 649, 654, 568 N.E.2d 870, 875 (1991)*(stating that the tort of retaliatory discharge is a "limited and narrow cause of action").

1 *Section 207* of the FLSA provides that employees who work more than forty hours in a week must be compensated at a rate of time and one-half. *29 U.S.C. § 207(a)(1)*. *Section 215* of the FLSA provides that an employer may not discharge or otherwise discriminate against an employee because the employee has filed a complaint or initiated a proceeding related to the Act. *29 U.S.C. § 215(a)(3)*.

[*5] In cases following *Kelsay*, courts have refused to recognize retaliatory discharge claims unless recognition was necessary to further the goals expressed in *Kelsay*. *Driveaway*, 781 F. Supp. at 551-53; *Cromley v. Board of Education, 699 F. Supp. 1283, 1297 (N.D. Ill. 1988)*(Moran, J.); *Gutierrez v. Chicago, 605 F. Supp. 973 (N.D. Ill. 1985)*(Rovner, J.); *Busa v. Barnes, 646 F. Supp. 615, 617-18 (N.D. Ill. 1986)*(Norgle, J.). That is, the courts have not recognized a retaliatory discharge claim unless there was no other remedy that would vindicate the public policy allegedly contravened.

In *Midgett v. Sackett-Chicago, Inc., 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984)*, the plaintiff was discharged after filing a worker's compensation claim for injuries sustained in the course of employment. Without exhausting available remedies under the collective bargaining agreement, plaintiff filed a common law action for retaliatory discharge. The Illinois Supreme Court upheld the plaintiff's right to maintain the common law retaliatory discharge action notwithstanding [*6] the availability of alternative remedies. In so doing, the Court focused on the fact that in a claim for retaliatory discharge, the plaintiff would secure a complete remedy due to the availability of punitive damages against the employer. Following *Kelsay*, the Court emphasized the necessity of protecting the applicable public policy through the deterrent effect against improper employer actions by punitive damages. Specifically, the Court stated:

> If there is no possibility that an employer can be liable in punitive damages, not only has the employee been afforded an incomplete remedy, but there is no available sanction against a violator of an important public policy of this state.

*Midgett, 473 N.E.2d at 1284*. The Court held that merely providing job reinstatement and back pay did not serve to protect the public policy at issue as it failed to provide an effective deterrent to improper employer conduct. *Id. at 1283*.

It is apparent from the cases that courts have recognized a claim for retaliatory discharge where the otherwise available remedies would not serve as an effective deterrent to future employer misconduct. Therefore, [*7] defendant's motion to dismiss the common law retaliatory discharge claim should be decided on whether the alternate remedy, the FLSA, effectively deters retaliatory discharge. It is this court's opinion that it does.

Defendant argues that the remedy provided by *29 U.S.C. § 216(b)* provides a wronged employee with a remedy for the discharge, and effectively deters such improper discharge. *29 U.S.C. § 216(b)* provides that:

> Any employer who violates the provisions of Section 6 or Section 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . .

*29 U.S.C. 216(b)*. While this section provides for liquidated damages rather than punitive damages, the additional penalty which it imposes on an employer certainly can be construed as having a deterrent effect. Moreover, *29 U.S.C. § 215(a)* provides:

> Any person who willfully violates any of the provisions of section 15 [*29 U.S.C. § 215*] shall upon conviction thereof be subject to a fine of not more than $ 10,000, or to imprisonment for not more that six months, or [*8] both . . .

*29 U.S.C. § 215(a)*. The possible imposition of criminal sanctions certainly vindicates the public policy of prohibiting the discharge of an employee for complaining about the failure to pay overtime wages. Therefore, we conclude that by acting as an effective deterrent to employers who may otherwise discharge employees who complain about failure to pay overtime wages, the FLSA provides an effective alternative remedy, thus

eliminating the need for a common law retaliatory discharge claim.

Because the available alternate remedy, the FLSA, does in fact provide a deterrent to the proscribed conduct, as well as a remedy for the discharged employee, we hold that there is no need to permit a claim for retaliatory discharge. Therefore, defendant's motion to dismiss Count I of the complaint is granted.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss Count I of the complaint is granted.

Charles P. Kocoras

United States District Judge

Dated: August 25, 1992

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CARLOS MARTINEZ, FRANCISCA          )
MARTINEZ, ARMANDO CELESTINO,        )
JUAN CASTILLO, and SILVINA          )
MARQUEZ, on behalf of themselves and )
all other employees similarly situated, )
known and unknown,                  )
                                    )
              Plaintiffs,           )
                                    )
       v.                           )       Case No. 08 C 1493
                                    )
BELLA FLOWERS & GREENHOUSE,         )       The Honorable George W. Lindberg
INC., an Illinois corporation, RAMON )
ORTIZ, individually, and MARIO ORTIZ, )     Magistrate Judge Jeffrey Cole
individually,                       )
                                    )
              Defendants.           )

**NOTICE OF FILING**

To:    Roy P. Amatore and Paul Luka         John Billhorn
       Amatore & Associates, P.C.           Billhorn Law Firm
       120 S. State Street, Suite 400       515 N. State Street, Suite 2200
       Chicago, IL 60603                     Chicago, IL 60610

       PLEASE TAKE NOTICE that on the 29h day of May, 2008, we filed Defendants' Reply
in Support of Motion to Dismiss Counts VI and VII and Claim for Attorneys' Fees in Count III of
Complaint with the Clerk of the United States District Court, 219 S. Dearborn Street, Chicago,
IL 60604, a copy of which is attached and hereby served upon you.

**CERTIFICATE OF SERVICE**

       I, Seth D. Matus, an attorney, certify that I caused a copy of this Notice and Answer to be
served on the above-named attorney via electronic transmission on May 29, 2008.

                                            /s/ Seth D. Matus
                                            Seth D. Matus

SCHOENBERG, FINKEL, NEWMAN & ROSENBERG, LLC.
222 S. Riverside Plaza, Ste. 2100
Chicago, IL  60606
(312) 648-2300